NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY v. W. B. MURPHREE et al.

Middle Section.  May 1, 1926.

No. petition for Certiorari was filed.

1. Pleading. Denial of signing an instrument is not a plea of non est factum.
   An answer which merely denies that the party signed the instrument is insufficient unless in addition it is alleged in terms equivalent to denial of the execution of the instrument.

2. Appeal and error. Complaint that a pleading is not verified cannot be raised for the first time in appellate court.
   In an action where the answer was a plea of non est factum which was not verified, held that the absence of the affidavit to such a plea cannot be raised for the first time in the appellate court especially where the parties treated the plea as sufficient in the lower court.

3. Carriers. Evidence. Burden in on the railroad to show defendant was the consignor where the answer denies executing the bill of lading.
   In an action to recover carriage charges where the consignor named in the bill of lading denied that he executed the instrument, held the burden of proof was on the railroad to show that the defendant was the consignor and assumed the payment of freight and transportation charges under the tariff rates.

4. **Carriers.  Delivery of goods to carrier for shipment does not impose upon the shipper an absolute obligation to pay carriage charges.**

Delivery of goods to carrier for shipment does not under the Interstate Commerce Act impose upon the shipper an absolute obligation to pay the freight charges.  The parties are free to contract as to who shall pay the charges and the carrier is at liberty to require payment or to permit that payment be deferred until the goods reach the end of the transportation.

5. **Carriers.  Shipper is presumably the consignor.**

Ordinarily the person from whom the goods are received for shipment assumes the obligation to pay the carriage charges, for the shipper is presumably the consignor and the transportation ordered by him is presumably on his own behalf, but this inference may be rebutted as in the case of other contracts.

6. **Carriers.  Principal and agent.  Carrier has the right to presume that an employee of the shipper has authority to agree upon the terms of the shipment.**

Where one leaves it to an employee to make a shipment the carrier has the right to assume, nothnig to the contrary appearing, that the agent has authority to agree upon the terms of the shipment and is therefore not bound by private instructions of the owner.

7. **Carriers.  Principal and agent.  Where carrier has actual knowledge of agents authority it cannot contract with him beyond that authority.**

In an action to recover carriage charges where the shipper gave his employee instructions to ship the goods in the name of another party both as consignor and consignee and the carrier, with knowledge of the fact, designated the shipper in the bill of lading as consignor, held the shipper is not liable for carriage charges even though he was designated as consignor with the consent of the agent because it was beyond the scope of the agent's authority.

8. **Carriers.  Consignee is liable for freight charges from point where goods are refused to point where it is sold by the railroad as provided by law.**

In an action to recover carriage charges where the goods were refused by the consignee and it was necessary for the railroad to unload and reload the goods to be shipped to another point to be sold as provided by law, held. that the consignee was liable for such charges.

9. **Carriers.  Interstate shipment.  An interstate shipment must be tested by the actual transaction and not by what could have been done.**

In an action to recover carriage charges on an interstate shipment where the proof showed that the shipment had traveled through different states but that it could have been routed so that it would not have left the state of its origin, held that the fact of interstate shipment must be tested by the actual transaction and not by what could have been done.

Appeal from Chancery Court, Humphreys County; Hon. J. W. Stout, Chancellor.

Decree affirmed.

Fuqua & Carter, of Waverly, and William Waller, of Nashville, for appellant, Railroad.

J. F. Shannon and J. E. Tubb, of Waverly, for appellees, Murphree, et al.

CROWNOVER, J.   This is a suit by common carrier against T. M. Herrin, as consignor, and W. B. Murphree, as consignee of an interstate shipment, to recover transportation charges.

The bill alleged that the defendant, T. M. Herrin, on June 17, 1921, shipped by freight, from Ridgely, Tennessee, one saw-mill outfit to the defendant, W. B. Murphree, at McEwen, Tennessee. The outfit consisted of a traction engine, saw-mill and attachments loaded on an Illinois Central flat car and was shipped over the Illinois Central Railroad Company's tracks to Hickman, Kentucky, and from there over the Nashville, Chattanooga & St. Louis Railway's tracks to McEwen, Tennessee. The consignee, Murphree, refused to accept the shipment. The complainant immediately notified both of the defendants that the shipment had arrived and urged immedate disposition of same, but both refused to pay the transportaton charges or to suggest disposition of the shipment, and the Company was forced to unload the outfit at McEwen, Tennessee, and to keep the same until six months had expired, when the same was shipped to Nashville and sold for $100; that the shipment weighed 24,000 pounds, and that the freight charges, war tax, cost of unloading and re-loading, demurrage charges for six months and the freight charges to Nashville, where the sale was had, amounted to $1,040.88, and this suit was instituted to recover these charges less $100, the proceeds of said sale. In other words, the suit was brought for $940.88, with interest from December 27, 1921. Both defendants demurred and their demurrers were overruled.

The defendant, Herrin, then answered alleging that he had sold the saw-mill to the defendant, Murphree, for $300, for which Murphree had executed his note. He admitted that he was the original owner of the saw-mill outfit, but insisted that he had sold the property to defendant, Murphree, and under the agreement he was to load the same on the car, and that defendant, Murphree, was to pay the cost of transportation; that in compliance with this agreement, his employees loaded the same on a flat car at a switch near Ridgely, Tennessee, and that he advised his employee to have the same shipped to Murphree, naming Murphree as consignor and consignee; that he had to leave the county at the time and instructed his employee to ship it in Murphree's name, but that his employee was prevented by the agents and employees of the Railroad, and that while the shipment was made in his name, yet it was wrongfully done and against his instructions, the agent having refused to ship 'as directed by defendant, Herrin. Defendant, Herrin, was not present when the shipment was made and denied that he had signed the bill of lading or authorized any agent to sign his name to the same, and denied liability.

He also denied that it was an interstate shipment, and insisted that if it had been shipped the most direct route that it would not have gone out of the State of Tennessee.

The defendant, Murphree, answered and denied liability. He admitted that he had bought a saw-mill from defendant, Herrin, but he denied that he had ever purchased such a saw-mill as had been shipped to him, and that the saw-mill shipped was not according to the representations made by defendant, Herrin, and that it was merely a scrap pile. He insisted that he was not present when the shipment was made and that he never authorized any one to ship such a saw-mill to him. He denied that the saw-mill was stored at McEwen, and denied that he was liable for the freight or demurrage charges, and denied that it was really an interstate shipment, and further denied all liability.

Several depositions were taken, and at the hearing, were read to the Chancelor, who decreed that complainant recover of the defendant, Murphree, all items of freight and demurrage charges, except the freight charges from McEwen to Nashville of $68.40, and he, therefore, rendered a decree for $872.48 and cost against said Murphree, but dismissed the bill as to defendant, Herrin.

The complainant, Railroad, excepted and appealed, and has assigned three errors, which are as follows:

"(1)  The Chancellor erred in adjudging and decreeing that the bill be dismissed as to T. M. Herrin, and that complainant pay the cost incident of making said T. M. Herrin a party defendant.

"(2)  The Chancellor erred in adjudging and decreeing that complainant was not entitled to recover from defendant, W. B. Murphree, the item of $68.40, freight from McEwen to Nashville.

"(3)  The Chancellor erred in not giving complainant a decree against both defendants for $940.88, the amount sued for, together with interest and cost."

It appears from the record that the defendant, Herrin, sold a traction engine and saw-mill outfit to the defendant, Murphree, for the sum of $300, for which Murphree executed his note, and the property was to be delivered on a car at a switch on the Illinois Central Railroad Company near Ridgely, Tennessee, and that the defendant, Murphree, was to pay the freight charges from there to McEwin, Tennessee. The defendant, Herrin, ordered a flat car which was left at the switch, and he and his employees loaded the traction engine, saw-mill and fixtures on said car, but said Herrin was called away to Lake County and left the matter of shipment to an employee, named Clark. He told Clark that when he had placed the property on the flat car that his contract was ended and directed Clark to go to the station and obtain a bill of lading, and to have the shipment consigned from W. B. Murphree to W. B. Murphree, and wrote this on a piece of paper. The employee,

Clark, went to the station known as Miston and had the agent, Mr. Cook, to fill out the bill of lading. The agent, Cook, filled out the bill of lading naming T. M. Herrin as consignor and shipper, and W. B. Murphree, as consignee. The agent signed T. M. Herrin's name as shipper, per Cook, but this agent did not sign the bill of lading as agent of the Railroad, but delivered the copies to the employee, Clark, and told him that the Railroad could not accept the shipment until the car had been properly inspected for the purpose of ascertaining whether the shipment was properly loaded, and that the bill of lading was not binding until it had been signed by the agent of the Railroad. The bill of lading was later signed by J. Kemp, agent at Ridgely, Tennessee; it appearing that this switch was only two or three miles from that station and the switch had no local agent. It does not appear in the proof who delivered this bill of lading to Kemp or had him to sign the same. So under these circumstances the shipment was made in the name of T. M. Herrin as consignor and shipper to W. B. Murphree, consignee at McEwen. When the shipment arrived at McEwen, Murphree was notified, and after an inspection of the shipment he declined to accept it, insisting that the goods were not as represented. Then both the consignor and consignee were notified and disposition of the shipment was requested; but the consignor, T. M. Herrin, refused to give any directions as he insisted that he had complied with his contract and that the engine and saw-mill were as represented, and that under the contract he was to place the saw-mill outfit on the car at the switch but that Murphree was to pay the freight charges, and that his contract was completed and his obligation ceased when he had delivered the shipment to the railroad, and that he had instructed his employee to have the shipment consigned from Murphree to Murphree, and that his employee had explained this to the agent, Cook, who filled out the bill of lading with full knowledge that the employee had no authority to make the shipment in his name as consignor, and that the railroad, notwithstanding its knowledge of these facts had filled out the bill of lading and signed his name as consignor without his knowledge or consent. Whereas, consignee Murphree insisted that the shipment was not as represented and that he had bought no such saw-mill as that shipped, and for that reason he was not liable for the transportation charges, demurrage, etc.

The bill of lading in the instant case was the Uniform Bill of Lading, standard form, and stated that the shipment was received from T. M. Herrin, subject to the classifications and tariffs in force at the time, consigned and to be shipped to Walter B. Murphree, subject to all the conditions, whether printed or written therein,

and which were agreed to by the shipper and accepted for himself and his assigns. "T. M. Herrin, per Cook," is signed as shipper.

Section 8 of the conditions in said bill of lading states: "the owner or consignee shall pay the freight and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery," etc.

The bill of lading was made an exhibit to the bill in this cause and was really the foundation of the suit, but its execution was not denied under oath as required by the statute, Shannon's Code, secs. 4630 and 5556.

Defendant, Herrin's answer contains a paragraph, the averments of which may be sufficient to be termed a plea of non est factum. In it he denies that he signed the same or authorized any one to sign his name to the bill of lading. This of itself is insufficient, as his plea must deny the execution, and merely denying that he "signed" the same is insufficient, unless, in addition it is alleged in terms equivalent to a denial of the execution of the instrument. See State v. Roberts, 11 Humph., 539; Grissom v. Fite, 1 Head., 332. However, the answer contains other allegations, which when taken all together, is, we think sufficient to deny the execution of the instrument, and the absence of an affidavit to such a plea cannot be raised for the first time in the appellate court, especially where the parties seem to have treated the plea as sufficient in the lower court. See Alexander v. Wilkes, 11 Lea, 227.

Now, under this state of the record, treating the plea as valid, the burden of proof was on the Railroad to show that Herrin was the consignor and assumed the payment of freight and transportation charges under the tariff rates. Has it done this?

"Delivery of goods to a carrier for shipment does not, under the Interstate Commerce Act, impose upon a shipper an absolute obligation to pay the freight charges. The tariff did not provide when or by whom the payment should be made. As to these matters carrier and shipper were left free to contract, subject to the rule which prohibits discrimination. The carrier was at liberty to require prepayment of the freight charges, or to permit that payment to be deferred until the goods reached the end of the transportation. Wadley Southern R. Co. v. Georgia, 235 U. S., 651, 59 L. Ed., 405, 409, P.U.R., 1915A, 106, 35 Sup. Ct. Rep., 214. Where payment is so deferred, the carrier may require that it be made before delivery of the goods; or concurrently with the delivery; or may permit it to be made later. Where the payment is deferred, the contract may provide that the shipper agrees absolutely to pay the charges; or it may provide merely that he shall pay if the consignee does not pay the charges demanded upon delivery of the goods. Or the carrier may accept the goods for shipment solely on account of

the consignee; and, knowing that the shipper is acting merely as agent for the consignee, may contract that only the latter shall be liable for the freight charges. Or both the shipper and the consignee may be made liable. Nor does delivery of goods to a carrier necessarily import, under the general law, an absolute promise by the shipper to pay the freight charges. We must, therefore, determine what promise, if any, to pay freight charges, was, in fact, made to the Central Company.

"To ascertain what contract was entered into we look primarily to the bills of lading, bearing in mind that the instrument serves both as a receipt and as a contract. Ordinarily the person from whom the goods are received for shipment assumes the obligation to pay the freight charges; and his obligation is ordinarily a primary one. This is true even where the bill of lading contains, as here, a provision imposing liability upon the consignee. For the shipper is presumably the consignor; the transportation ordered by him is presumably on his own behalf; and a promise by him to pay therefor is inferred (that is, implied in fact) as a promise to pay for goods is implied when one orders them from a dealer. But this inference may be rebutted, as in the case of other contracts. It may be shown by the bill of lading or otherwise, that the shipper of the goods was not acting on his own behalf; that this fact was known by the carrier; that the parties intended not only that the consignee should assume an obligation to pay the freight charges, but that the shipper should not assume any liability whatsoever therefor; or that he should assume only a secondary liability. In this case the bills of lading acknowledge receipt of the coke from the Central Company. But it did not sign them. Nor was it described therein as the consignor. There was no clause by which the shipper agrees expressly either to pay the freight charges or to guarantee their payment." See Louisville & Nashville Railroad Co. v. Central Iron & Coal Co., 265 U. S., 59, 68 L. Ed., 900.

Where one leaves it to his employee to make a shipment, the authority of such agent to make contracts of shipment for his principal may be conferred upon him expressly, or it may be implied by the conduct or course of dealing of the parties, and such contracts if made by the agent within the apparent scope of his authority are binding on the principal, unless the carrier has knowledge that he has not such authority. The carrier has the right to assume, nothing to the contrary appearing, that the agent has authority to agree upon the terms of shipment, and is therefore, not bound by private instructions of the owner. See 2 C. J. 662-3; 1 Am. & Eng. Ency. Law (2 Ed.), 1034; Great Northern Railway Co.

v. O'Connor, 232 U. S., 507-8, 58 L. Ed. 703; American Railway Express Co. v. Daniel, 269 U. S. 40 (70 L. Ed. 154).

In the instant case, Cook, the Railway agent, signed Herrin's name as consignor and shipper. Cook says it seems that he signed Herrin's name to the bill of lading because Herrin's employee, Clark, could not write his name, but it is apparent from his testimony that he does not have any distinct recollection of the incident; whereas, Clark, the employee, says that he saw Cook, and requested that he fill out the bill of lading from Murphree to Murphree, making Murphree both consignor and consignee; that he told Cook what Herrin had said and showed him the paper that Herrin had written, which directed that Murphree be made both consignor and consignee, and that Cook read the paper, but he does not know whether Cook filled out the bill of lading as directed, or how the shipment was made. The testimony of both parties on this subject is meager.

Of course, in the absence of knowledge, the railroad is not bound by the private instructions given by Herrin to his employee, Clark, but where it had actual knowledge of his authority, and that he had instructions to ship it in the name of Murphree, both as consignor and consignee, then Herrin is not liable even though he is designated, with the consent of his agent, as consignor and shipper in the bill of lading, because it is beyond the scope of the agent's authority.

The shipper is presumably the consignor and a promise to pay the transportation charges may be inferred, but this inference may be rebutted, as in the case of other contracts. It may be shown by the bill of lading or otherwise that the shipper was not acting in his own behalf, and that this fact was known by the carrier, that the parties intended not only that the consignee should assume the obligation to pay the freight charges, but that the shipper should not assume any liability whatever therefor. The carrier has a right to refuse to carry the goods unless the transportation charges are paid, or unless the shipper assumes the liability, but it has no right to designate him as consignor, even with the consent of his agent, in violation of the principal's instruction in his absence and without his knowledge so as to make him liable for the transportation, charges.

There is some contention that the Railroad refused to make the shipment designating Murphree both as consignor and consignee, but designated Herrin as consignor with the consent of his agent, Clark; but this cannot alter the situation or make Herrin liable, as it was done in violation of Herrin's instruction, of which the Railroad had notice.

It is further contended that Cook, the agent of the Railroad, at Miston, was agent of Clark and Herrin in this transaction, and that he acted merely as a secretary or amanuensis, and that he did not act as the agent of the Railroad. It appears that the switch where the saw-mill outfit was loaded was near both towns—Miston and Ridgely. Cook was the Railroad's agent at Miston and Kemp was the Railroad's agent at Ridgely. Cook filled out the bill of lading and signed Herrin's name to it, without giving any satisfactory reason for doing so, while Kemp signed it as the Railroad's agent at Ridgely, and no satisfactory reason is given why he signed it instead of Cook other than as explained by Cook, that he did not sign for the Railroad as the car had to be inspected for the purpose of seeing whether it was properly loaded, which was afterwards done by the local freight conductor, and presumably the conductor in passing through had Kemp to sign it; but Cook was the agent to whom Clark was sent with instructions to fill out the bill of lading and he states that the reason that he did not sign it was because the shipment had to be inspected first; hence, we think it is clear that he was acting as agent for the Railroad in this transaction, and that the Railroad was affected with knowledge through him. It results that the assignment of errors as to Herrin must be overruled.

But we think that the assignment of error that W. B. Murphree should be charged with the $68.40 freight on the shipment from Mc-Ewen to Nashville for the purpose of making the sale, should be sustained.

Under the Tennessee Statutes, Shannon's Code, secs. 3598 and 3600A1, the law in force when this property was shipped, the railroad is required to hold unclaimed property, not perishable for six months, and may then ship it to one of the principal offices in the State to be sold at public auction for the charges, and out of the proceeds may retain the expense of transportation, storage, advertisement and sale. Said property may be sold at any point where the best price can be obtained. We think this authorized the Railroad Company to collect freight charges on the shipment to Nashville and to recover the legitimate demurrage charges.

The defendant, W. B. Murphree, did not appeal, and has neither assigned errors nor replied to appellant's assignment of errors.

Under the proof the demurrage and freight charges were proper. We do not think there is anything in the contention that the railroad is estopped to collect the transportation charges, because it wrote letters that the "owner" of the saw-mill was liable therefor. An interstate carrier cannot be estopped by subsequent transactions of this character. See Railroad v. Coal & Coke Co., 147 Tenn., 433.

We think there can be no doubt about this being an interstate shipment. The fact of interstate shipment must be tested by the actual transaction and not by what could have been done. Western Union Telegraph Co. v. Speight, 254 U. S., 17, 65 L. Ed., 104.

A decree will be entered in this court for $940.88, and the cost of the cause including one-third of the cost of the appeal in favor of the complainant, Railroad, against W. B. Murphree, for all of which execution may issue; but the bill is dismissed as to defendant, T. M. Herrin, and the cost of making him a defendant in the lower court, and two-thirds of the cost of the appeal is decreed against appellant, Railroad, and the sureties on its appeal bond, for which execution may issue.

Faw, P. J., and DeWitt, J., concur.