## MRS. S. J. LATTA v. ANNA PAVLOWA, et al.

Middle Section. June 5, 1928.

Petition for Certiorari denied by Supreme Court, June 30, 1928.

Thos. H. Malone and W. J. Wade, of Nashville, and W. P. Metcalf, of Memphis, for appellant.

Littell Rust, of Nashville, for appellee.

SENTER, J. The bill in this cause was filed by complainant, Mrs. S. J. Latta, against Anna Pavlowa, S. Hurok and S. Hurok, Inc., defendants. Service of process was not had on S. Hurok and S. Hurok, Inc., and hence the suit proceeded against the defendant Anna Pavlowa alone. The suit is based upon the alleged breach of the following contract:

"Agreement entered into this 16th day of May, 1923, between S. Hurok as manager of and agent for Anna Pavlowa and her Ballet Russe, party of the first part, and Mrs. S. J. Latta, Randolph Building, Memphis, Tennessee, party of the second part.

"Witnesseth that in consideration of the premises and of one ($1.00) dollar paid by each party to the other, receipt of which is hereby acknowledged, it is hereby agreed: Anna Pavlowa and her Ballet Russe will give their artistic services for two performances to be given on Saturday, February 16, 1924, in the City of Memphis, Tennessee.

"The Party of the Second Part agrees to furnish a suitable theatre or auditorium in said city, on the date or dates above mentioned, also ushers, box office service, stage hands, electric lights, tickets, house programs, advance sale and all newspaper advertising, piano if required, and provide for bill posting and distributing, and express and freight charged on printing.

"In the event that party of the second part shall refuse or neglect to provide any of the items hereinbefore stated, the party of the first part, at his option, may refuse to carry out this contract and the party of the second part shall be liable for damages.

"The party of the second part for and in consideration of the above artistic services agrees to pay on the day of the entertainment and prior to the commencement thereof, to S. Hurok or his duly acknowledged representative, the sum of seventy (70%) per cent of the gross receipts. All extra stage hands, operators and electricians, together with all newspaper advertising, to be paid for by party of the second part.

"All payments to be made in United States currency, certified check or New York draft.

"This agreement is conditional upon the ability of the party of the first part to fulfill it. In case of delay or detention in transportation or inability to fulfill this contract through illness, accident or other legitimate or unavoidable cause, it is agreed that there shall be no claim for damages by either party against the other.

"All prior verbal statements, promises or alleged agreements are merged in this contract.

"It is hereby agreed that the party of the second part will print thereon and underline on all preliminary and house programs, the following words: 'Baldwin piano used.'

"In Witness Whereof, the parties hereto have signed these presents the day and date first above written.

"(Signed)    S. Hurok,
"(Signed)    Mrs. S. J. Latta.

"Note: It is understood and agreed that all gross receipts above ten thousand ($10,000) dollars are to be divided equally between the parties hereto."

Defendant, Anna Pavlowa, filed an answer, in which she disclaimed any knowledge of the contract as set out in the bill; she neither admits nor denies the existence of such a contract. She denies that she had anything to do with the making of the contract, or for the making of any contract for any performance to be given by her and her company at any special place or time in the United States. In the answer this defendant sets up that on January 7, 1921, she entered into a written contract with defendant S. Hurok, in which she sold her time for sixteen weeks, and under that contract agreed to appear in any place in the United States and Canada that S. Hurok might designate, and for which she was to be paid for the service of herself and her company the sum of $10,000 per week. It is further alleged that said contract entered into on that date which covered the season of 1921 and 1922, was continued in force for the seasons of 1922 and 1923 and 1923 and 1924, and was the contract under which she was employed by the defendant S. Hurok on February 16, 1924, the date on which complainant alleged that she sustained the loss by reason of the failure of Anna Pavlowa's company to appear in Memphis and give the performance under the alleged contract sued upon by complainant in this cause.

At the hearing of the cause the Chancellor decreed a dismissal of the bill against Anna Pavlowa and taxed complainant with the costs of the cause. From this decree the complainant has appealed to this court, and has assigned numerous errors. The errors assigned will be considered and disposed of collectively insofar as the same may be done.

There is contained in the record a finding of the facts and an opinion by the Chancellor, and from which we quote in part as follows:

"The contract was breached by the party of the first part, in that Pavlowa did not appear in Memphis on February 16, 1924, because, and only because she appeared on that date in a theatre in the City of Atlanta. Before Mrs. Latta received word from S. Hurok that the contract was going to be breached she had begun to incur expense in advertising Madame Pavlowa's appearance. She had also sold tickets to the amount of $1,176.-45. Pavlowa had appeared in Memphis during the season of 1922 and had danced before a packed house, all seats filled and numbers standing. She was a favorite in Memphis and according to the proof, she was universally acclaimed as a premiere danseuse of the world and a great drawing card everywhere. Numbers of people from nearby towns were writing or calling by phone with regard to the reservation of seats at the time Mrs. Latta was notified by Hurok that Pavlowa was not going to appear. The theater which Mrs. Latta had secured for the performance has a seating capacity of from 1492 to 1500, and standing room for about 100. The prices at which seat tickets were to be sold were $3, $4, and $5, and standing room at $2. February 16th was Saturday, a favorite day for the matinee performance and quite favorable for an evening performance. The weather was not such as to interfere with persons who might desire to attend either the matinee or evening performance.

"From the foregoing recital it is apparent that Mrs. Latta is entitled to recover damages from such a person or persons as stand in a contractual relationship to her and have breached the terms of the contract."

We concur in the above-quoted finding of the facts as found by the Chancellor. The Chancellor then proceeds to analyze the contract, and especially with reference as to who the real party of the first part was, and since we fully concur with the Chancellor on this subject we adopt the following language from the opinion of the Chancellor:

"First. As we have seen, one of the parties to the contract is 'S. Hurok, Inc.' as manager and agent for Anna Pavlowa and her Ballet Russe, party of the first part, and that it was signed simply, 'S. Hurok.'

"If the word 'Agent' did not appear there might be some serious question as to who, according to the language of the contract, was the real party of the first part. The word 'manager' is ambiguous and may mean one authorized to generally act in contract for a principal, or it may mean one merely employed to oversee or superintend the execution of a contract

made by his employer. But the word 'agent' has a definite and certain meaning. The simple definition of an agent is one who acts for or in the place of another by authority from him. He is a substitute, appointed by the principal, with power to do the thing which the principal may or can do. (2 C. J., 420.)

"And so, in the designation 'manager and agent' the last word removes any ambiguity there might be in the first and the whole expression clearly carries the idea of agent. (Pierce v. Osborne, 19 Pac. (Kan.), 656; Jewel v. Colonial Theater Co., 103 Pac. (Cal. App.), 527.)

"So, I conclude the construction to be put upon the language employed is that Hurok purported to act as the agent for a named principal and that Anna Pavlowa is the real party of the first part, provided, S. Hurok or S. Hurok, Inc., had authority to act for her or if she thereafter knew of or ratified their actions, or if she held them or either of them as her agent, and thus clothed them or either of them with ostensible authority."

However, the Chancellor proceeds further in his opinion and refers to the contract between Madame Pavlowa and S. Hurok contained in the record, dated January 7, 1921, and to which riders are attached extending it, with certain modifications, until May 1, 1924. We deem it unnecessary to set out this contract in full, as it is rather lengthy, but the material portions of the contract to be considered may be stated as follows: By its terms the manager, S. Hurok, employs the service of the artiste, Madame Pavlowa and her troupe, together with scenery and costumes, for public performances given under the direction and management of Hurok, in any theater in United States or Canada, and Madame Pavlowa, referred to in the contract as the artiste, agrees that, during the term of the agreement, she will not appear or perform except under the direction and management of Hurok, nor in any theater not designated by him. Hurok, designated in the contract as "manager," is to keep in repair, at his expense, all scenery, costumes and properties. The manager has the right to arrange the tour, with the exception that it must end at New York, or, if not, he must pay the transportation of the artiste and troupe to New York. The manager to pay transportation of artiste and troupe from London to New York, and all transportation charges and expense while entour, and at its end, all transportation charges from New York to London. The manager to provide the orchestra, pay for all publicity and furnish all theaters. Hurok to pay to Madame Pavlowa for herself and company $10,000 per week. There are other provisions in the contract which we deem unnecessary to refer to at this time.

Objection was made to the introduction of the above contract as evidence by solicitors for complainant on several grounds, but the

Chancellor held that the contract was competent to be proved for the purpose only of showing the relation existing between Hurok, or Hurok, Inc., and the defendant Anna Pavlowa. The action of the Chancellor in admitting this contract as evidence was excepted to, and is made the basis of certain assignments of error by appellant. In admitting this evidence the Chancellor held that it was only competent as tending to show that neither Hurok nor Hurok, Inc., had authority to contract in Madame Pavlowa's name, and that it was competent for that purpose. This question and other questions as to the competency of evidence objected to by complainant will be later referred to.

The principal question made by the assignments of error present the question that in order to rely upon the defense which defendant Pavlowa relies in her unsworn answer, that she would have to specially plead non est factum to the contract sued on.

It will be observed from the answer of defendant Anna Pavlowa she did not deny that such a contract was entered into, but she simply disclaims any knowledge of such a contract, and then sets up as her real defense that under her contractual agreement with Hurok she had no control or voice in the selection of the cities in United States and Canada in which she would make appearances with her troupe during the period covered by the contract. She does not specifically deny the authority of Hurok to bind her in a contract to appear in any of the cities of America or Canada. By her answer, it is in effect a statement that if such a contract was entered into between Hurok and Mrs. Latta that she had no knowledge of it, which is equivalent to saying that if he by any contract with Mrs. Latta sought to have the same appear as her contract he was acting without her authority, or consent.

It is the contention of appellant that this defense could only be made by the sworn plea of non est factum, and that the defense could not be relied upon in an unsworn answer, under the Tennessee statute on the subject which provides as follows:

"Section 5556 (Shannon's Code). Non Est Factum: Every written contract, or instrument, or signature purporting to be executed by the party sought to be charged, his partner, agent, or attorney in fact, and constituting the foundation of an action, is conclusive evidence against such party, unless the execution thereof is denied under oath."

This section is taken from chapter 86 of the Acts of 1817, section 2; chapter 27, section 4 of the Acts of 1819.

We think that this suit is clearly based upon a written contract, which purports to have been made by Hurok, Inc., or Hurok, as the agent of Madame Pavlowa. The contract sued upon is set out in full in the bill, and we think that the contract on its face shows

that the real party of the first part to the contract is the defendant Anna Pavlowa, and fully concur with the holding of the Chancellor on that construction placed by him on the contract sued on.

The Tennessee statute on the subject of non est factum has been before the court in many cases and has been frequently applied by the Supreme Court of this State (Jones & Kimbro v. Walker, 5 Yerg., 428; Barrett v. Hambright, 4 Sneed, 586; Douglas v. Cross, 6 Cold., 416; Snapp v. Thomas, 5 Lea, 503; Birchfield Gro. Co. v. Sweeny & Wear, 154 Tenn., 325.)

By these cases and other authorities we think that the statute applies to a suit brought on any written contract, where the written contract is made the basis of the suit, but does not apply to contracts, where the instrument denied by the defendant is not made the basis of the suit, but is merely evidential in support of the suit. Such was the holding in Birchfield Gro. Co. v. Sweeny & Wear, supra. In that case, opinion by Mr. Justice McKinney, held that the suit was not based on a written order, and then quotes Section 5556 of Shannon's Code. It was stated in the opinion that the Justice of the Peace warrant made no reference to any written contract, but was a suit on account. In that case the court said: "In the form in which this action was brought, the contract was of evidential value, but it was not the foundation of the action." In that case it was pointed out: "It is only where the written instrument is declared on in the pleadings that a denial under oath becomes necessary. Where such an instrument is merely offered in evidence, in support of the action, its execution does not have to be denied under oath."

However, it would appear from the opinion of the court in the Birchfield Gro. Co. case that if the contract of the parties was in writing, and the contract made the basis of the suit, a plea of non est factum will be necessary.

To the same effect is the case of Peres v. Ensel, 1 Shan. Cas., 188, where it was said: "The suit was brought upon an account and not upon the written contract offered in evidence. Therefore the defendant was not required to deny upon oath the execution of the paper." The conclusion we reach is that this case comes within the provisions of section 5556 of Shannon's Annotated Code, and that there should have been a plea of non est factum properly sworn to, else the contract itself, under the statute, is conclusive evidence that it was executed by a duly authorized agent to bind the party in whose name it purports to have been executed. "The term 'constituting the foundation of an action' simply means that a written instrument declared upon, as the foundation of a suit, is conclusive unless the execution thereof is denied under oath." (Birchfield Gro. Co. v. Sweeny & Wear, supra.) Counsel for appellee, in the

excellent brief·filed, states that in all the cases cited and relied upon by appellant, that they are suits at law, and that in the present suit oath to the answer was specifically waived by complainant in the original bill, and that for this reason the special plea of non est factum, or a sworn denial, or a denial under oath, was not necessary.

We are cited to no authority which makes the distinction contended for by appellee, nor do we know of any authority which makes such distinction. We know of no reason why a defense in a chancery court, where the defendant denies the execution of the contract sued on, and made the basis of the suit, should not be presented by the plea of non est factum, or a denial under oath, as in suits at law. The formal waiving of the oath to an answer we do not think is to be construed as a waiver of the statutory requirements with reference to matters set up as defense when required to be under oath. The complainant cannot anticipate that the defendant would deny the execution of the instrument sued on, but in waiving the oath to the answer in order that the answer may not have the force and effect of a deposition, has reference to a denial of the breach of the contract or damages resulting therefrom, and is not to be considered as a waiver of the statutory requirement, that if the execution of the instrument sued on, or authority for executing the same is denied, that the denial shall be under oath.

The further contention, however, is made by appellee, that this question was not raised in the court below, and that the complainant did not in any way suggest to the Chancellor that the defense was in effect a plea of non est factum, not supported by the oath as required by the statute. On this question we have carefully·examined the record and fail to find that complainant ever brought this question to the attention of the court below, by any pleading, or motion, or by a petition to rehear. It is the contention of appellee in this regard that the question cannot, therefore, be made for the first time on appeal.

This contention by appellee, in our opinion, must be sustained. On this subject it is said by Mr. Gibson, sec. 71, p. 67, Gibson's Suits in Chancery, as follows:

"A complainant is expected to be especially vigilant in his efforts to win his suit, and when he fails to take advantage of an opportunity to cripple his adversary he is deemed to have satisfactory reasons for waiving the opportunity, and so the court holds him to his choice in the matter, and will not allow him afterward to claim what he had waived.

"Thus, the failure of a complainant to object in due season (1) to a plea because not duly sworn to, or because deficient

in substance or form . . . he is deemed to have waived such deficiency, . . . when an insufficient defense is thus waived, the defective pleading has, at the hearing, all the force and effect of a sufficient pleading.''

In support of the above rule the case of Seifred v. Peoples Bank, etc., 1 Baxter, 200, is cited by the author. In that case it is said in the first headnote:

"Objection to plea in abatement for defective verification, comes too late at the hearing of the cause. The plea being insufficient in its averment should have been taken from the files on motion, or stricken out on. argument for its insufficiency for defect in its verification, that the defendant might have amended. The objection was waived by waiting to make it at the hearing.''

In the body of the opinion it is said:

"The cause came on for hearing on bill, plea, answer and deed of assignment, when complainant moved the court to treat the plea in abatement as a nullity, because the affidavit thereto was insufficient and because it is overruled by the answer. The Chancellor disallowed the motion. . . .

"The objection to the plea in abatement, for defect in its verification, came too late at the hearing of the cause. . . . Complainant waived the objection, by waiting to make it on the hearing. There was no error in the action of the Chancellor in refusing to treat it as a nullity on account of the defective verification.'' (Citing Wilson v. Eifler, 7 Cold., 31.)

In the present case there was no objection made to the defect in the pleading relied upon by the defendant in the answer, and no objection made at any time in the court below to the defense relied upon, non est factum, not being verified as required by the statute. Nor was there any suggestion made at the hearing of the cause to this apparent defect. The question is made for the first time on the appeal to this court.

We think it well settled under the decisions in this State that the criticism made of the alleged error comes too late when the objection and the error complained of was not called to the attention of the lower court, and was raised for the first time in the appellate court. (Roberts v. Southern R. Co., 141 Tenn., 95, 206 S. W., 457; Brewer v. DeCamp Glass Casket Co., 139 Tenn., 97; Lewis & Sons v. Ill. Central R. R., 150 Tenn., 94.)

For the reasons above set forth we are constrained to reach the conclusion that the assignments of error based upon a failure to present the defense made by appellee by sworn answer, or properly verified plea of non est factum, must be overruled and disallowed.

Having reached this conclusion, we are further of the opinion, that the plea of non est factum having been waived that the case must be treated as if the proper plea of non est factum, properly verified, had been made, under the rule as stated in section 71, Gibson's Suits in Chancery: "When an insufficient defense is thus waived, the defective pleading has, at the hearing, all the force and effect of a sufficient pleading."

In this view of the question, we think that any evidence offered in behalf of the defendant, Anna Pavlowa, which would have been competent under a plea of non est factum, duly verified, would be competent in support of the defense relied upon by her. We therefore think that the evidence objected to by complainant, including the contract between Hurok and Anna Pavlowa, was competent for the purposes for which it was admitted by the Chancellor.

After a careful examination of the evidence contained in the record we are also of the opinion that the Chancellor reached the correct conclusion in holding that Hurok was not acting within the purview of this alleged agency, and was not authorized to bind the defendant Anna Pavlowa to the contract. It clearly appears from the contract between Hurok and Madame Pavlowa, and under which she was operating during the season of 1923 and 1924, that she sustained the relation of employee to Hurok, her employer. For $10,000 a week and other considerations mentioned in the contract between them, she agreed for herself and company to make such appearances in such theaters as he would direct. The matter was solely the business of Hurok, or Hurok, Inc., as to where the performances would be given by her troupe. She was not consulted about any contract, nor was she entitled to be consulted about any contract for any performances that her troupe would give in any of the cities of America or Canada during the term of her contract with Hurok. We think it also clear from the evidence of the complainant, Mrs. Latta, that she understood and knew the general custom which obtained between artistes of this character and the manager, and that she also believed, if she did not know, that Hurok, in the capacity of the manager, had the defendant Madame Pavlowa under contract for the services of herself and troupe, and was in full control of her iterancy.

It results that we find no error in the decree of the Chancellor. All assignments of error are accordingly overruled, and the decree of the Chancellor is affirmed. Appellant and sureties on the appeal bond will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.