# PHILLIPS v. TIDWELL et al.—174 S. W. (2d) 472.

Western Section.  December 30, 1942.

Petition for Certiorari denied by Supreme Court, May 8, 1943.

544

H. P. Wood and B. O. Weeks, both of Selmer, for appellant.

Ross & Ross, of Savannah, for appellees.

ANDERSON, P. J. In addition to certain other relief not necessary to mention, the chancellor passed a decree in this case awarding the complainant a recovery on a promissory note against A. W. Wilson, C. L. Wilson, H. F. Tidwell and G. E. Tidwell. From this decree the defendant, G. E. Tidwell, alone, appealed. The defenses are res judicata and non est factum.

The basis of the defense of res judicata is that the defendant, Tidwell, was discharged from liability on the note by a judgment rendered by the Circuit Court of McNairy County at the May Term, 1937. The complainant contends, and the chancellor held, that this judgment was void for at the time it was rendered the plaintiff in that suit was dead, he having owned the note at the time that suit was instituted.

There is no real controversy about the facts, in so far as are concerned the questions necessary to be decided. The note involved is payable to the order of G. J. Garrison, and was due December 12, 1931. It purports to have been signed by M. L. Wilson, A. W. Wilson, C. L. Wilson, H. F. Tidwell and the defendant, G. E. Tidwell. G. J. Garrison was the owner and holder of the note at the time of his death on February 3, 1933. He was survived by his widow and an only child, the complainant in this case, Mrs. Marvin Phillips. He owed no debts at the time of his death and as a consequence there was no administration on his estate. The widow, under her rights as such, took the entire personal estate, including the note referred to. On December 5, 1934, she brought suit on the note before a justice of the peace against all of the makers. A trial resulted in a judgment in her favor. Of the defendants in that judgment, G. E. Tidwell only appealed to the circuit court, where the papers were filed January 16, 1935.

Before any action was taken in the Circuit Court, the plaintiff in that suit, Mrs. G. J. Garrison, died intestate August 31, 1935, and left surviving her as her only child and distributee, her daughter, the complainant, Mrs. Marvin Phillips. Since Mrs. G. J. Garrison owed no debts, no administrator was appointed and her entire personal estate, including the note then in suit in the circuit court, passed to her daughter.

The minutes of the circuit court reflect that on May 17, 1937, in a case styled G. J. Garrison v. M. L. Wilson et al., a final judgment was rendered. The order recites that the case having come on to be heard on that day, "when it appearing to the court that the defendant, G. E. Tidwell is not liable on said note he is therefore discharged from liability on the same: It further appearing to the Court that from the entire record that plaintiff, G. J. Garrison is entitled to a judgment against the defendants, M. L. Wilson, A. W. Wilson, C. L. Wilson and H. F. Tidwell on said note in the sum of $540.00 principal and the further sum of $177.00 interest making a total of $677.00; it also appearing to the Court that the note sued on provides for attorneys fees and it appearing that a fee of $75.00 would be a reasonable fee in this case to J. A. Shelton, atty. for Plaintiff the same is adjudged by the court: making in all the sum of $752.00 [sic.]''

There had been no suggestion of the death of G. J. Garrison or Mrs. G. J. Garrison, and no attempt to revive the suit in the name of any person. Mrs. Phillips, the sole distributee of Mrs. Garrison and the complainant here, had no notice of any of the proceedings in the circuit court.

We are concerned here only with the validity of the judgment in the circuit court in so far as G. E. Tidwell

was discharged from liability. He contends that since it affirmatively appears from the face of the record that the circuit court had jurisdiction of the parties and the subject matter and the proceeding was regular on its face, the judgment at most was voidable only, rather than void, and hence could be set aside only upon the proper averment of some equitable ground of relief, such as fraud, accident or mistake. We think this is a misconception of the law as it applies to the facts. Ignoring the misnomer due to the omission of "Mrs." in the style of the case, as, other questions aside, might very well be done, the attempt to discharge the defendant Tidwell from liability was equivalent to a judgment against Mrs. Garrison, who was at the time dead. Such a judgment is an absolute nullity, and not merely voidable. Morrison v. Deaderick, 29 Tenn. (10 Humph.), 342; Smith v. Cunningham, 2 Tenn. Ch. 565, 571; Collins v. Knight, 3 Tenn. Ch. 183. See also, Carter et al. v. Carriger's Adm'rs, 3 Yerg. 411, 24 Am. Dec. 585; Kelly v. Hooper's Ex'rs, 3 Yerg. 395.

With respect to such a judgment, the facts essential to show it invalid may be proven in any proceeding directly attacking it, and this is true even though such facts are de hors the record. See Morrison v. Deaderick, supra. In the instant case the amended bill makes such an attack, and under the undisputed evidence it is well made.

There is nothing in the case of Outlaw v. Cherry, 88 Tenn. 367, 12 S. W. 725, to conflict with the view we have expressed. There it was insisted that a judgment previously rendered by the Supreme Court was void because the defendant was dead at that time. In response to this contention, it was said, "the judgment is not void on its face, and can only be made to appear so by evi-

dence outside the record, which we, having no original jurisdiction, are unauthorized to take.'' It was not held that a court having such jurisdiction could not take such evidence and, upon proper pleading, decree accordingly. Nor do we discover anything in New York Cas. Co. v. Lawson, 160 Tenn. 329, 336, 24 S. W. (2d) 881, that helps the defendant.

In Kelly v. Hooper's Executors, supra, the action was one of debt brought upon the record of a decree pronounced in a chancery court of Mississippi. The executors plead that the decree upon which the action was founded was pronounced more than two years after the death of the defendant. In holding that this decree was properly sustained, the court said: ''For this cause the decree is void, and no action can be supported upon it. Any fact which will show the court had no jurisdiction, and that the judgment is consequently void, may be pleaded. We could not when called upon to enforce this decree, in the present action, refuse to look into the record to see whether the court had jurisdiction, whether the fact by which the want of jurisdiction appear on the face of the proceedings, or be shown by plea of the defendant.'' See, also, Earthman's Administrators v. Jones, 2 Yerg. 484.

██ The defendant next contends that the evidence did not warrant the conclusion reached by the chancellor that the complainant had discharged the burden cast upon her by the general plea of non est factum. In opposition, the complainant first insists that the plea was insufficient in form and in substance.

In his answer to the amended bill, the defendant averred that he had not been able to see the note sued on ''in the original J. P. case since it got into the Circuit Court, but

had seen it beforehand and in case the court should hold that the jundgment in the Circuit Court will not protect this defendant, the defendant now states that having seen said note and having seen the signatures thereto, and by and because of his knowledge of the parties and of his own recollection he avers that he never signed the note sued on in the J. P. Court in favor of J. G. Garrison, nor did he authorize anyone else to sign it for him.''

Later in the answer he averred that ''defendant states that M. L. Wilson who got the benefit of said note and that the said M. L. Wilson did request this defendant to sign the note with him, but this defendant refused to sign it and did not sign it and never authorized the said M. L. Wilson or anyone else to sign it for him and did nothing to induce the payee in said note to accept the note and in fact never had any talk with the payee about the note, nor did he know until the suit came up before the J. P. that it was claimed that he was one of the signers of said note. Defendant therefore relies on this, his plea of non est factum, to said note.''

The oath to the answer is to the effect that the defendant ''has read said answer and that the statements and allegations therein made are true and correct according to the best of his information, knowledge and belief.''

The complainant contends that the oath is insufficient, in that it is made upon information and belief, it being insisted that the requirement is that the oath be to the effect that the plea is true, or true in substance and in fact. This is correct; but the complainant did not make this question in the chancery court and cannot make it for the first time in this court. Kenner v. City Nat. Bank, 164 Tenn. 119, 46 S. W. (2d) 46; Waggoner v. Dorris, 17 Tenn. App. 420, 68 S. W. (2d) 142; Nashville, C. & St. L. R. Co. v. Murphree, 2 Tenn. App. 482.

It is also true that an averment that one did not sign or authorize another to sign is not a good plea of non est factum. The plea must be to the effect that at the time the plea is filed the instrument sued on is not then the act and deed of the defendant or in the form authorized by Code, section 8789, to the effect that the instrument was not executed by the defendant or by anyone authorized to bind him in the premises. Such a plea relates to the status of the instrument sued on at the time the plea was filed, and to say that it was not signed by the defendant or anyone by him authorized to do so is not sufficient, for, within the meaning of the applicable rule, a party may execute an instrument he never signed or authorized to be signed; or he may ratify it afterwards, or so act as to make it his deed by estoppel. Furnish v. Burge, 101 Tenn. 538, 47 S. W. 1095; see, also, Fox v. Cortner, 145 Tenn. 482, 239 S. W. 1069, 22 A. L. R. 1341.

However, the complainant went to trial without questioning the sufficiency of the plea and it is manifest from the course of the proceedings that the case was tried upon the assumption that the issue was properly made. Without objection, evidence pro and con was heard upon the question, none of which would have been material in the absence of a plea of non est factum; for, by virtue of Code, section 9726, the note purporting to have been signed by the defendant would have been conclusive. We are satisfied therefore that sound principles require the conclusion that the deficiency in the plea was waived. Kenner v. City Nat. Bank, supra; Wilson v. Eifler, 47 Tenn. (7 Cold.), 31; Seifred v. Bank, 60 Tenn. (1 Baxt.), 200; Latta v. Pavlowa, 7 Tenn. App. 525, 533; Nashville, C. & St. L. R. Co. v. Murphree, supra; Gibson's Suits in Chancery, sec. 71.

In addition to the rule announced by these authorities, it is also the rule that a litigant is confined in the appellate court to the theory on which he tried his case in the court of first instance. Simpson v. Harper, 21 Tenn. App. 431, 432, 438, 111 S. W. (2d) 882; Williamson Bros. v. Daniel, 21 Tenn. App. 346, 369, 110 S. W. (2d) 1028; Nichols v. Smith, 21 Tenn. App. 478, 111 S. W. (2d) 911; American Lead Pencil Co. v. Nashville, C. & St. L. R. R., 124 Tenn. 57, 65, 134 S. W. 613, 32 L. R. A. (N. S.), 323.

This case, as we say, was tried in the chancery court upon the theory that one determinative issue between the parties was whether the note in suit was executed by the defendant or by anyone authorized to bind him in the premises, and it is too late now to say that due to a deficiency in the plea incorporated in the defendant's answer, the issue was not properly raised.

We are thus brought to the question of whether the evidence preponderates against the conclusion of the chancellor to the effect that the defendant signed the note, there being no contention that he was otherwise bound.

When his deposition was taken, the original note was presented to the defendant for examination, following which he denied categorically that he had signed it and denied that he had authorized anybody to sign it for him. He said that M. L. Wilson, who seems to have been the principal, "come to me to sign it and I would not do it." Wilson was dead at the time the defendant's deposition was taken. The others signing the note who did not contest their liability were living, but none of them were examined as witnesses.

■ The complainant makes much of the fact that the defendant filed no plea of non est factum either in the justice of the peace court or in the circuit court, insisting that an adverse evidentiary inference is to be drawn therefrom. We are unable to attach the significance to this feature of the case which the complainant seems to think should be given it. In the proceedings at law the then plaintiff, Garrison, was represented by J. A. Shelton, Esquire. The defendant said that he made no defense of any kind before the justice of the peace because, when served with the warrant, he went to M. L. Wilson and "told him what about this note he had sued me on," to which Wilson responded, "Don't pay no attention to it, I will fix that up," whereupon, the defendant testified, "I said, you better fix it up, I never signed the note and you know it." He further testified that upon learning that the judgment had been rendered against him he employed an attorney and appealed the case to the circuit court and that "I told Shelton (the attorney for Garrison) I never signed the note;" that he attended every term of court until the matter was settled; that there was no trial, but upon the contrary, when Shelton learned that he was going to "fight it," that he, Shelton, said that "he could not prove it and would just leave me out and take judgment against the rest."

This is what was done and there is no dispute about these facts. We think they furnish an adequate explanation for the failure to file a plea of non est factum in the circuit court. Neither Mr. Shelton nor Mr. Weeks, the attorney whom the defendant had employed to represent him, was examined as a witness, and there is no reason to doubt the facts as testified to by the defendant. In fact, instead of militating against the defendant's con-

tention that he did not sign the note, the facts about this feature of the matter tend to support his claim, if it be permissible to draw any inference at all from them. We say this because the only conclusion reasonably possible is that, after investigating the matter, the attorney for the plaintiff in that proceeding came to the conclusion that he had no case against the defendant.

We also think no significance can be attached to the fact that the plea of non est factum was not filed in the justice of the peace court in view of the defendant's explanation, especially as he was not represented by counsel at that time. The failure to file a plea before the justice of the peace did not prejudice the defendant's right to make the defense in the circuit court where the case was triable de novo. Trevathan v. Caldwell, 51 Tenn. 535.

The general plea of non est factum in the instant case, or what, as we have said, was treated upon the trial as the equivalent of such a plea, operated to avoid the effect of Code, section 9726, which provides that "Every . . . signature purporting to be executed by the party sought to be charged, . . . and constituting the foundation of an action, is conclusive evidence against such party," and to put the burden of proof on the complainant with respect to the execution of the note. Kenner v. City Nat. Bank, supra. The parties so treated the matter.

The only evidence complainant offered was the testimony of three witnesses who undertook to make a comparison between the defendant's alleged signature on the note and that of the signature to certain other instruments proven or admitted to have been genuine. The first of these witnesses, Mr. Broyles, age 58, who

had worked in a bank for 27 years, testified that "a good many different handwritings had come under his observation." He was presented with certain documents, each bearing the genuine signature of the defendant and, after comparing them with the signature appearing on the note, was asked whether they were signed by the same person. The most that he would say was that with respect to one of the two of them, "Well, there is a good deal of resemblance in them." As to others, he said the resemblance was less. That is about the sum and substance of his testimony.

Mr. A. R. Williams had been connected with the bank since 1916, had been assistant cashier since 1928, and had had occasion to observe many different handwritings and to pass upon them. In making similar comparisons, the most that he would say was that some "seem to me to be the same signatures;" with respect to others, "in my opinion, it would be the same writing;" or, "I think it is the same writing;" or, "all are very similar."

Mr. H. M. Williams, who had been connected with the bank since 1909 and a cashier since 1919, also had many different handwritings come under his observation upon which he had passed. He said that he had made a careful examination of the different signatures in evidence and testified that, "I think it is the same writing;" "it is my opinion that they are all the same." On cross-examination, he said, "I didn't know I was being examined as an expert. I have been called on several times to give my opinion on handwriting." He admitted that in the course of his experience in the banking business, in passing on signatures he had been occasionally mistaken.

Neither of the three witnesses had any personal knowledge of the signature of the defendant.

As we say, this was all the evidence offered by the complainant to show that the note was executed by the defendant. We think it was insufficient for that purpose. The evidence was competent, perhaps, by virtue of Code, section 9731, assuming that the witnesses are to be regarded as "expert witnesses" within the meaning of that provision, which we think very doubtful, to say the least of it. The true distinction between an expert and a non-expert witness, says Mr. Wharton, is that the latter gives the result of a process of reasoning familiar to everyday life and the former gives the result of a process of reasoning which can be mastered only by special scientists. Following this statement, the court, in Powers v. McKenzie, 90 Tenn. 167, 181, 16 S. W. 559, 562, continues: "It is obvious that, however an 'expert' may be defined, he should, in order to give his opinion as an expert, have some special as well as practical acquaintance with the immediate line of inquiry." However, in the instant case, the testimony was unobjected to and has been considered for what it is worth, which we think is very little. Compare Franklin v. Franklin, 90 Tenn. 44, 16 S. W. 557, and Omohundro v. State, 172 Tenn. 48, 60, 109 S. W. (2d) 1159.

In addition to the weakness inherent in the nature of such testimony generally, the probative value of that in the present case is further impaired by the equivocal nature of the views expressed by at least two of the witnesses which we have in part quoted above. All three had substantially the same qualifications and the same opportunity for forming an opinion.

Upon a consideration of the whole case, we are constrained to conclude that from a probative standpoint this

evidence falls short of what is necessary to overturn the unequivocal denial by the unimpeached defendant that he either signed the note or authorized the signing of it, when it is considered in connection with the corroborating facts and circumstances in the case and the presumption of good character to which the defendant is entitled.

We may say in this connection that in the field of questioned documents it is well known that similarity between two specimens of handwriting, or in two signatures, instead of always being proof of genuineness of the one that is questioned, is often considered by experts to have the contrary effect. While there is nothing in this case about the matter, it is notorious that competent penmen, those practiced in the art, can simulate the signature of another in a manner that would warrant a layman or the average employee of a bank in saying that it and the genuine "look very much alike" or "bear a strong resemblance to each other," to use the language of the witnesses upon whose opinions the complainant relies.

The result is that the decree is reversed and the bill as to the defendant, G. E. Tidwell, is dismissed. The case is remanded to the chancery court for execution of the decree against the other parties in the manner therein provided. The complainant will pay the cost of the appeal and the cost accrued in the chancery court as an incident to the suit against the defendant, G. E. Tidwell.

Ketchum, J., concurs.

Baptist, J., did not participate in the hearing or decision of this case.