Pearl Cooley, Admrx., Complainant, Appellant, *v.* East
& West Insurance Company *et al.*, Defendants,
Appellees.

(*Nashville,* December Term, 1932.)

Opinion filed June 26, 1933.

WHITAKER & WHITAKER, for complainant, appellant.

THOMPSON & BALLARD and MOORE & MOORE, for defendants, appellees.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by the widow and administratrix of John Harvey Cooley on four insurance policies, aggregating $8,000, covering a house that was destroyed by fire. Cooley lost his life in the fire. Mrs. Maude F. Johnson had a mortgage on the premises and the policies

had been assigned to her so far as she was interested under standard mortgage clauses. Mrs. Johnson filed a cross-bill asserting her rights. The insurance companies interposed pleadings setting up their defenses to the original bill and to the cross-bill. The chancellor dismissed the bill of complainant but pronounced a decree in favor of the cross-complainant for the amount of the mortgage debt with penalty added.

The complainant and the insurance companies took the case to the Court of Appeals. That court decreed a partial recovery in favor of the complainant but such recovery was absorbed by the mortgage debt. The decree for cross-complainant was affirmed. The case has been brought to this court by petitions for *certiorari* filed in behalf of complainant and the insurance companies, which have been granted and argument heard.

 It is first contended in behalf of the insurance companies that the damage to the house resulted largely, if not altogether, from an explosion. All the policies excluded liability in consequence of an explosion "unless fire ensues, and, in that event, for the damage by fire only."

Merely a question of fact is involved in this defense and this question is not open in this court. Without entering into the proof, the chancellor found that it was a smoke explosion, that the fire preceded the explosion. The Court of Appeals found that the explosion was "of little consequence" and that the greater part of the damage was caused by the fire.

There is no conflict in these findings. A review of the facts in cases presented to this court on the petition for *certiorari* is only permissible to the extent that the findings of the chancellor and the Court of Appeals are

shown by the record to be contradictory. *Miller* v. *Kendrick,* 153 Tenn., 596.

The chancellor found that the building had an insurable value of $8,000, in which finding the Court of Appeals apparently concurred.

The next defense of the insurance companies, urged against the complainant, not against the mortgagee, is that there was a misrepresentation by the insured as to the use of the premises at the time the policy was issued and a breach of the conditions or stipulations of the policy as to change of use.

The several policies in suit contain these provisions:

"This policy is made and accepted subject to the foregoing stipulations and conditions, and to the following stipulations and conditions printed on back thereof, which are hereby specially referred to and made a part of this policy, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto."

Riders to each policy recited that the building insured is "occupied and to be occupied only for dwelling purposes."

Other provisions were:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstances concerning the insurance or subject thereof.

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the hazard be increased by any means within the control or knowledge of the insured."

The proof showed that the building insured was, at the time of the fire, and probably was, at the time the several

policies were issued, or transferred to Cooley, used as a road house instead of a dwelling house.

■ It appears from the proof that no inquires were made of Cooley as to the use to which the premises were put at the time the policies were issued or transferred to him. The acceptance of these policies, however, containing such provision as to the use of the premises, under decisions of this court, amounted to a representation that the use of the premises was as stated in the policies. *Foster* v. *Illinois, etc. Ins. Co.,* 156 Tenn., 436; *Standard Grocery Co.* v. *National Fire Ins. Co.,* 161 Tenn., 640.

The provisions of the policies above quoted, respecting the use of the premises, are referred to by counsel for the insurance companies as warranties. *Boyd* v. *Insurance Co.,* 90 Tenn., 212, and Cooley's Briefs on Insurance, p. 2068.

■ But by section 6126 of the Code representations and warranties are put on the same footing and this statute makes warranties harmless in the destruction of policies, when as affirmances of fact, they were made in good faith and were immaterial. *Insurance Co.* v. *Stallings,* 110 Tenn., 1; *Mutual Life Ins. Co.* v. *Dibrell,* 137 Tenn., 528.

No bad faith on the part of the insured with reference to these constructive representations appears, the proof indicating that he never, as a matter of fact, read the policies, or had them in his possession for any length of time. The policies were delivered to the mortgagee.

The determinative inquiry then is upon the materiality of the implied representations with reference to the use of the premises. Ordinarily such representations would be material to the risk. Naturally the use of a building

as a road house involves a greater hazard than the use of the same building as a dwelling house.

But, under the proof developed in this case, we think the insurers in undertaking this risk were not influenced at all by these implied misrepresentations ascribed to Cooley.

The evidence shows that every house in Chattanooga is classified as to use and the fire insurance rate thereupon fixed by the Tennessee Inspection Bureau. That these classifications and rates are furnished to every insurance agency in Chattanooga and that policies are issued by the several agents in accordance with the rates and classifications fixed by said Tennessee Inspection Bureau.

It seems idle to argue that the tables prepared by the Inspection Bureau are not taken as determinative of the use of risks accepted, nothing else appearing. Premium rates are regulated largely by the use of property and the rates here exacted were based on the use reported by the Inspection Bureau.

The laws of Tennessee prohibit any discrimination in premium rates of fire insurance, under penalties, and it is a matter of common knowledge that in the issuance of fire policies in cities and towns where the Tennessee Inspection Bureau operates, the policies are written ordinarily without inquiry and at the rates and upon the classification fixed by said Bureau. The proof shows that the policies in suit were issued in just this manner.

Under such conditions, implied representations of the insured, such as are here relied on, are not a real factor in the acceptance of a risk or in fixing the premium rate. These matters are determined by the insurers upon the reports of the Tennessee Inspection Bureau, for the work of which organization the insurers pay.

 Representations by one of the parties to a contract cannot be relied on by the other party to avoid the contract unless such representations afforded a material inducement to the formation of such contract. This is true of insurance contracts as well as other contracts.

A leading case announcing this rule is *Flinn* v. *Headlam*, 9 Barn. & C., 693, 109 English Reprint, 257. A representation was there made as to the nature or extent of a cargo. There was also a certificate from a third party as to the sea-worthiness of the vessel. Suit upon the policy was defended on the ground that the representation as to the cargo was untrue. It was said, however, in substance, that the insured might still recover if the underwriters in undertaking the risk were guided by the certificate of sea-worthiness and not by the representation as to the cargo.

The principle announced in this case is generally approved by the text-writers.

"The misrepresentation may be of a fact actually material to the risk, but the circumstances may clearly evidence that the insurer did not rely upon it, but upon other matters in forming his judgment, and it does not therefore operate as an inducement to enter into the contract or in fixing the rate of the premium, in which case its falsity will not be fatal, for the circumstances make the fact immaterial." Joyce on Insurance, section 1910.

To the same effect see Couch's Cyclopedia of Insurance, section 830; May on Insurance, section 188.

We accordingly conclude that the constructive representation by the insured as to the present use of the property was not regarded as material when the insurers issued or transferred the policies in suit to Cooley.

 If the provision that the house was "to be occu-

pied only for dwelling purposes" be treated as a continuing warranty or promissory warranty, such provision is still immaterial. Section 6126 of the Code applies to promissory warranties. *Insurance Co.* v. *Whitaker*, 112 Tenn., 151; *Hughes Bros.* v. *Aetna Ins. Co.*, 148 Tenn, 293.

A change in the use of premises which does not enhance the risk is an immaterial change and an immaterial breach of a stipulation as to use. 26 C. J., 199, and cases cited.

The chancellor's finding and the proof indicate that this house was not occupied as a dwelling when the policies in suit were issued or transferred to Cooley. If the premises were used for road house or like purposes when the policies were issued or transferred to Cooley and continued to be used for such purposes, the risk of loss was not enhanced. As a matter of fact there was no change in actual use and therefore no change from the use described in the policy that was material.

The next defense, interposed by three of defendant insurance companies, is that the amount of insurance in force at the time of the fire exceeded the amount permitted by the policies. The insurance on the building was as follows:

North British & Mercantile Insurance Company, $1,000. Issued to Hood, from whom Cooley bought, and transferred to Cooley July 5, 1929. This policy contained no restriction upon the amount of insurance. East & West Insurance Company, $2,000. Rhode Island Insurance Company, $1,000. American Insurance Company, $4,000. Total insurance, $8,000.

The policy of the North British & Mercantile Insurance Company was not issued from the same agency that wrote the other policies. The other three policies, aggregating

$7,000, were all issued by the Chattanooga Insurance Agency, a partnership.

The certificates of authority to the Chattanooga Insurance Agency from the three companies involved are filed herein. The Chattanooga Insurance Agency was clearly a general agent of these three insurance companies under repeated decisions of this court. *Murphy* v. *Southern Life Ins. Co.*, 62 Tenn. (3 Baxt.), 440; *Duluth National Bank* v. *Knoxville Fire Ins. Co.*, 85 Tenn., 77; *Aetna Life Ins. Co.* v. *Fallow*, 110 Tenn., 720.

The policy of the American Insurance Company was issued on April 14, 1930. The policy of the East & West Insurance Company was issued on October 19, 1929. The policy of the Rhode Island Insurance Company was issued December 18, 1929. Each of these policies contained a provision limiting the total amount of insurance on the building to $6200. The policy issued by the East & West Insurance Company being for $2,000 and the policy issued by the Rhode Island Insurance Company being for $1,000, when the policy of the American Insurance Company for $4,000 was issued, this made an aggregate of $7,000 of insurance written upon this building by the same agents.

So far as the American Insurance Company is concerned the action of the agent in issuing a policy which, to its knowledge, made the total insurance exceed the stipulated amount, was a clear waiver on the part of that company of the limitation upon the total insurance.

The case with respect to the American Insurance Company falls directly within the authority of *Life & Casualty Ins. Co.* v. *King*, 137 Tenn., 685. The insurer, at the time of the issuance of this policy, had knowledge of existing facts which, if insisted upon, would have in-

validated the contract from its very inception. Such knowledge constitutes a waiver of conditions in the contract inconsistent with the known facts and the insurer is precluded thereafter from asserting the breach of such conditions.

█ The knowledge of agents, such as the Chattanooga Insurance Agency, is imputable to their principals, not only under *Life & Casualty Ins. Co.* v. *King,* and cases therein cited, but on authority of the cases just before cited dealing with the authority of general agents.

We think that the East & West Insurance Company and the Rhode Island Insurance Company are also precluded from insisting upon a forfeiture of the policies issued by them, by reason of overinsurance, but for a different reason.

The American Insurance Company policy was issued on April 14, 1930. The fire occurred on June 18, 1930, more than two months later. The Chattanooga Insurance Agency, agents of the East & West Insurance Company and the Rhode Island Insurance Company, acquired information imputable to their principals of the breach of the $6200 limitation when the American Insurance Company policy issued at the hands of these agents.

█ It is quite generally held that where agents, such as the Chattanooga Insurance Agency, subsequent to the issuance of a policy prohibiting or restricting further insurance, have written other policies for the same insured, but for other insurance companies they represent, their knowledge as to the existence of such other policies is the knowledge of the first insurer. It is so held in *Equitable Ins. Co.* v. *McCrea, Maury & Co.,* 76 Tenn. (8 Lea), 541, and, among other cases, we refer to *Hagan* v. *Merchants, etc. Ins. Co.,* 81 Iowa, 321; *Hadley* v. *New Hampshire*

*Fire Ins. Co.*, 55 N. H., 110; *Bradbury* v. *Pennsylvania Ins. Co.* (Me.), 111 Atl. 609, and cases collected under 26 C. J., 300, section 371.

It was intimated in *Haverly* v. *Fire Insurance Co.*, 138 Tenn., 557, that the company issuing the first policy and restricting the amount of insurance would not be affected by the knowledge of its agent, who as agent for another company wrote a policy which made the total insurance exceed the limit prescribed in the first policy. This expression was not necessary to a decision of that case. The first company had ceased to do business in this State and the agent was no longer its agent at the time he wrote the second policy. As observed before, the intimation is opposed to the weight of authority.

Under many decisions, when the insurer acquires knowledge that other insurance has been effected making the total insurance exceed the limit fixed by it, the insurer is thereby put to an election. The insurer must either declare a forfeiture within a reasonable time or be held to have acquiesced in the overinsurance. *Watkins* v. *N. S. Casualty Co.*, 141 Tenn., 583; *Westchester Fire Ins. Co.* v. *McAdoo* (Ch. App.), 57 S. W., 409.

If notice of a breach of condition is given to an insurer before loss, good faith requires the insurer, if it intends to claim a forfeiture, to do so with reasonable promptness and to give the insured an opportunity to protect himself by procuring other insurance. Under such circumstances the insurer ought to speak.

''The true rule seems to be that while mere silence on the part of the insurer does not ordinarily furnish sufficient grounds of a waiver of a right of forfeiture on its part, yet, on the other hand the insurer must on receiving notice of a right of forfeiture act with a reasonable dili-

gence, if by its failure to do so the insured would be led to believe that his policy remained in force and afforded him indemnity. That is, the failure on the part of the insurer to cancel a contract of insurance when notice is brought home to it of a cause of forfeiture is, as a general rule, deemed an election that the contract may remain in force and prevents the insurer from subsequently insisting upon the forfeiture." *York* v. *Sun Ins. Co.,* 66 Ind. App., 269, 113 N. E., 1021, 1023.

"If the notice of forfeiture is given the insurer before the destruction of the property, it is the duty of the insurer to take some affirmative action by which to express dissent in an unequivocal way, and put the assured on notice that the forfeiture will be claimed. That is to say, before the damage has occurred, and after notice of forfeiture, a waiver of the forfeiture may be inferred from mere silence on the part of the insurer, if it be for such an unreasonable time as to imply the purpose not to insist on the forfeiture." *Southern States Fire Ins. Co.* v. *Kronenberg* (Ala.), 74 So., 63.

Other authorities to the same effect will be found collected in 26 C. J., p. 330, section 414.

The case of *Dale* v. *Continental Ins. Co.,* 95 Tenn., 38, is not in conflict with the foregoing. In that case there was a failure to pay an installment of premium due on a policy, which failure, by the terms of the contract, had the effect of suspending the policy. The insured wrote the company that he expected to pay shortly, the letter appearing to have been received the day the installment was due. Three days of grace were allowed as to the maturity of the installments of premium. Five days after the last day of grace the company wrote the insured a letter showing that they treated the policy as suspended

and requesting an early remittance to revive the insurance. The letter of the insurance company was written on the day that the loss occurred and no doubt before the company had knowledge of the loss. Silence of the insurer for so short a time as five days after knowledge of ground for forfeiture was naturally held not an estoppel or waiver.

In the case before us the insurers remained silent for more than two months after knowledge of the additional insurance.

It is said that the agents representing the three companies making the overinsurance defense had no knowledge of the existence of the North British & Mercantile Insurance Company's policy amounting to $1,000. That, even if there was a waiver of the $6200 limit, such limit was waived only to the extent of permitting $7,000 of insurance, the amount written by the Chattanooga Insurance Agency. The chancellor evidently did not credit the contention that the Chattanooga Insurance Agency was without knowledge of the existence of the North British & Mercantile Insurance Company's policy. Whatever the knowledge of this agency was, however, the $6200 limit was waived and no other limit was fixed, and we think insurance up to the insurable value of the property was thereupon permissible.

The foregoing disposes of the principal contentions made in behalf of the insurance companies. Some other suggestions made by them have been considered but deemed unavailing. There is no charge of bad faith with respect to procuring the insurance policies in suit made against the husband of the complainant, except that by the acceptance of the policies, he constructively misrepresented the use of the premises. The chancellor found

no indication in the record that the fire was of incendiary origin and that was not intimated in the pleadings or in the argument. To an ordinary man, the increase in hazard between the use of premises for a road house and its use for a dwelling house, and the consequent increase in the insurance rate upon such premises, would not occur. We think the insurance companies have little cause of complaint, if they are misled as to the character of a risk by the reports of their own employees, upon which reports they rely.

It follows that we think the lower courts were in error in dismissing the bill of the complainant. A full recovery upon the policies is decreed, to be apportioned between the complainant and cross-complainant according to their interests.

The chancellor allowed a comparatively small penalty, by way of attorney's fee, in favor of the mortgagee. The Court of Appeals approved this and we see no reason to interfere. The costs of the cause will be taxed to the several insurance companies in proportion to their respective liabilities.