SHIPLEY v. AMERICAN CENTRAL INS. CO.—109 S. W. (2d) 100.

Eastern Section. July 31, 1937.

Petition for Certiorari denied by Supreme Court, October 16, 1937.

260

Donald T. Stant, of Bristol, and Simmonds & Bowman, of Johnson City, for appellant.

Cox, Taylor & Epps and W. E. Miller, all of Johnson City, for appellee.

McAMIS, J.   This in an action upon a policy of automobile fire and theft insurance issued to the complainant below, A. L. Shipley, on November 24, 1934, upon a Stutz automobile.   The chancellor decreed a recovery in the sum of $1,500, the maximum amount of coverage provided by the policy.   The company has appealed, and insists: (1) That the evidence is insufficient to show that complainant's automobile was either stolen or accidentally burned; (2) that insured misrepresented the cost price, year model, and motor and serial numbers in applying for the policy, all of which were misrepresentations material to the risk upon which the insurer relied, and (3) that, if entitled to recover, the recovery should have been limited to the actual cash value of the automobile at the date of the fire, which the insurer insists was between $150 and $200.

█ (a)  We think the proof supports the chancellor's finding that complainant's automobile was stolen while parked across the street from complainant's office between 9 and 9:30 o'clock at night on October 2, 1935.   Complainant discovered the theft upon returning from his office, where he had gone about 30 minutes before, and it appears from the uncontradicted proof that he instituted an immediate and diligent search by contacting local police officers in Jonesboro, where the car was stolen, as well as police officials in surrounding towns.   According to his testimony, he interviewed local business people and police officials on the night of the alleged theft.   None of them, although named in complainant's testimony, were introduced for the purpose of impeaching his testimony.   At the request of counsel for defendant, telephone slips were exhibited by complainant showing calls to have been made to other towns in an effort to locate the car.   As a result of these efforts, the automobile was located by the sheriff of Greene county in a remote section near Chimney Top Mountain, completely destroyed by fire, on October 4, 1935.

Complainant testified that he had never been in this section of the country, and his testimony, corroborated by the testimony of another witness, shows that it was necessary for him to make inquiry to reach the scene of the fire after being advised by the police or sheriff at Greeneville, Tenn., where the car was located.

While the charge is not directly made that complainant destroyed, or procured some one else to destroy the car, much stress is laid upon the fact that when discovered following the fire two spare wheels locked in the well of the front fenders were missing.   It is insisted that these wheels could not have been removed without a key, except by forcing the lock.   No witness qualifying as an experienced locksmith was introduced in support of this contention, although lay witnesses were introduced who stated that it appeared impossible for these wheels to have been removed without interfering with the locks.   The spokes of the wheels are shown to have been made of wire, and

it is not shown that the wheels could not have been removed by cutting or removing these spokes. We agree with the chancellor that, in view of complainant's apparently sincere and diligent efforts to locate the car and apprehend the thief, the circumstances relied upon are altogether insufficient to implicate him in the theft and destruction of the car. It is shown that it was purposely burned by some one after the removal of the spare wheels and tires, but the proof shows that the car was driven into a thicket apparently with great haste, and that it was run over saplings and other obstructions, and partially wrecked before the fire. It might be plausibly argued that the thief started the fire after the car had been damaged and removed the numbers (as shown by the proof) for the purpose of making difficult the identification of the car, and thus delaying the pursuit.

(b) With respect to the alleged misrepresentation of the cost price, year model, and motor and serial numbers, the chancellor found that complainant was innocent of any intentional misrepresentation; that the erroneous statement of the cost price, year model, and motor and serial numbers contained in the policy were not material to the risk, and further, that, if material, were not relied upon by the insurer in the issuance of the policy.

The policy in question was issued through the General Insurance Agency of Johnson City, an agency of the defendant company, operated by Mr. I. B. Spraker. The policy was solicited by Mr. A. K. Keys, a licensed life insurance agent in Jonesboro. Mr. Keys was not authorized to write automobile fire and theft insurance, and it appears that he habitually brokered such of this character of insurance as he was able to sell through the General Insurance Agency of Johnson City. The information with respect to the car was given by complainant to Mr. Keys from memory, except that the motor and serial numbers were taken from a license receipt, but it does not definitely appear for what year the receipt was written. Mr. Keys made a memorandum of this information upon the back of an envelope which was delivered to Mr. Spraker when Mr. Keys went to his office to secure the policy. Mr. Keys was familiar with the automobile, had known complainant for many years, and stated to Mr. Spraker that the automobile was in good condition, and that he, Mr. Keys, considered the risk a good one. After going over these matters with Mr. Keys and obtaining from him information material to the risk, the policy was delivered to Mr. Keys to be redelivered to complainant.

The policy describes the automobile insured as follows: "Year Model 1930, Trade Name Stutz, Type of Body, Sedan, Serial Number 91939, Motor Number DC-59S, Actual Cost to Assured Including Equipment $4,450.00, Date Purchased Month —— Year 1930, New or Secondhand, New." Complainant testified that he told Mr. Keys the car was purchased either in the year 1928 or 1929; that if pur-

chased in 1928 it was a 1929 model, and if purchased in 1929 it was a 1930 model; that to the best of his recollection it cost $4,250 f. o. b. Indianapolis, which, with $200 added for tires, totaled $4,450; and that Mr. Keys of his own accord entered the $200 representing the cost of tires. The memorandum made by Mr. Keys was not produced. Mr. Keys testified that he was unable to remember the exact data contained in it, and was not in position to state that the description contained in the policy is the same as that contained in his memorandum. He does not deny complainant's testimony to the effect that he told Mr. Keys that he did not remember whether the car was purchased in 1928 or 1929, and that according to his recollection it cost, exclusive of tires, $4,250.

Where the insurer alleges that the representations made by the insured in an application for insurance upon which the policy was issued are false, the burden of proving the falsity of such representations rests on the company. Mobile Life Insurance Company v. Morris, 3 Lea 101, 31 Am. Rep., 631; Gordon v. United States Casualty Company (Tenn. Ch. App.), 54 S. W., 98; Metropolitan Life Insurance Co. v. Borsje, 2 Tenn. App., 173; Ball v. New York Life Insurance Co., 3 Tenn. App., 102; Southern Surety Co. v. Poles, 8 Tenn. App., 78; Interstate Life & Accident Co. v. Potter, 17 Tenn. App., 381, 68 S. W. (2d), 119.

The burden is also upon the insurer to establish the materiality of the misrepresentations relied upon. Penn Mut. Life Insurance Co. v. Mechanics' Savings Bank & Trust Co. (C. C. A.), 72 F., 413, 414, 38 L. R. A., 33.

In this case, we think defendant failed to carry the burden of establishing the alleged misrepresentations with respect to motor and serial numbers and year model. It is impossible to determine from the evidence whether these errors occurred when Mr. Keys made the memorandum, or occurred in the course of transcription from the memorandum to the policy by the stenographer in Mr. Spraker's office, who was not introduced as a witness. The memorandum appears to have been made in longhand, and it is as reasonable to suppose that the stenographer made the error in reading or transcribing these numbers as it is to suppose that complainant gave Mr. Keys erroneous information, or that he gave him correct information and that Mr. Keys made an error in setting the numbers down. If the error was made in the office of its agent, defendant would not be in position to rely upon it in avoidance of the policy, for the court would not be warranted in decreeing an avoidance of the policy upon the ground of misrepresentation unless it appeared that the misrepresentation was made by complainant or his agent, and it cannot arrive at such a conclusion upon speculative evidence.

With respect to the cost price of the automobile, the chancel-

lor found that the car itself cost $3,900, which, together with the cost of tires, totaled, with reasonable approximation, the cost price of $4,450 stated in the policy. The policy describes the car as a 1930 model. According to the evidence, this would indicate that it was purchased four or five years prior to the issuance of the policy. While the cost price might well be considered a factor in determining the amount of insurance, the older the automobile is the less important this factor becomes in determining the amount of the risk. In this case, the policy is what is known as an "open policy," which limits liability to the actual cash value of the property at the time of loss, never to exceed the sum of $1,500. In the light of this provision of the policy and the age of the car, the contention that the misstatement of the purchase price showing it to have cost less than 10 per cent. more than the actual cost constitutes a misrepresentation material to the risk reasonably calculated to induce the issuance of the policy is without material force or substance.

■ But, however these matters may be, we are of the opinion, as was the chancellor, that the policy was written upon independent knowledge of defendant's agent or, at least, upon statements made by Mr. Keys to the effect that the car was in excellent condition and that complainant was a good risk. This appears from the testimony both of Mr. Spraker and Mr. Keys.

In Cooley v. East & West Insurance Co., 166 Tenn., 405, 406, 61 S. W. (2d), 656, 659, the court, speaking through Mr. Chief Justice Green, said:

"Representations by one of the parties to a contract cannot be relied on by the other party to avoid the contract unless such representations afforded a material inducement to the formation of such contract. This is true of insurance contracts as well as other contracts."

The proof shows conclusively that, irrespective of motor and serial numbers or year model, the car destroyed by fire was the same car known by Mr. Keys and by him described to Mr. Spraker when the policy was issued, and we think complainant was correctly held entitled to recover upon the policy.

(c) As to the limit and measure of recovery, the policy provides:

"This Company's liability for loss or damage to the automobile described herein shall not exceed the actual cash value thereof at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated accordingly, with proper deductions for depreciation however caused, and without compensation for loss of use, and shall in no event exceed the limit of liability, if any, stated in paragraph C, nor what it would then cost to repair or replace the automobile or parts thereof with other of like kind and quality; such

ascertainment or estimate shall be made by the assured and this Company, or if they differ, then by appraisal as hereinafter provided.''

The proof shows that complainant's automobile was capable of giving service, with proper treatment, for at least 100,000 miles, and that it had been run only approximately 18,000 miles at the time of the fire. It is insisted in behalf of complainant that his recovery should be measured by the real or intrinsic value of the automobile to him, to be arrived at by considering the wear and tear up to the date of loss as well as its potentiality for future use, and that to place such an automobile upon the market at its actual cash value would be to sacrifice the greater part of its real or intrinsic value.

The proof shows that with the advent of small modern automobiles which operate much more economically than the large expensive types of previous years, are equally as comfortable to ride in, and capable of attaining greater speed than older models, it has become very difficult to dispose of old cars of this type. However, it is shown that they can be sold at some price on the market. It appears that automobiles of this type and character, including Packards and Cadillacs, are dealt in with sufficient frequency in Johnson City that automobile dealers, some five or six of whom testified for defendant in this case, were able to place a value of from $150 to $200 upon complainant's automobile. We infer from their testimony that their estimation of its value is based in part at least, upon what it could be traded in for upon a new car, which the court knows judicially is more favorable to complainant than to fix a value based strictly upon its cash market value. It would seem, therefore, that complainant's automobile could be replaced by another automobile ''of like type and quality,'' and that the policy provision that the liability of the company should never exceed the cost of replacing the automobile with another of like kind and quality has direct application to this case.

We are further of opinion that the automobile in question is not of such nature that its market value cannot be determined, and that the case of Gulf Compress Company v. Assur. Company, 129 Tenn., 586, 167 S. W., 859, relied upon by complainant, is not in point.

After observing that the same test of value may not be applied to different kinds of property and that the test to be applied in a particular case depends largely upon the nature of the property insured, its condition, and other circumstances existing at the time of loss, Mr. Couch proceeds to state:

''Ordinarily, where the subject matter of the insurance is of a nature such that its market value can be readily determined, such value is applied as the test of 'actual cash value' under policies insuring to that extent. For instance, the ordinary market value test has been applied in the case of policies which so provided, where the prop-

erty insured consisted of merchandise, such as dry goods, stocks of clothing or dresses, medical goods, etc., cotton in warehouse, stored cotton bagging, unthrashed grain in stacks, corn, hay, live stock, and other personal property, lumber, lath, shingles, etc., manufactured by the insured, a secondhand automobile.'' Couch on Insurance, Vol. 7, section 1840, pages 6129, 6130. See, also, the same text, Vol. 6, page 5089, and 14 R. C. L., page 1304, section 478.

We think the foregoing is the correct rule to be applied in this case. To adopt the rule insisted upon by complainant would open the way for the unscrupulous to go upon the market and purchase used automobiles, procure insurance at an amount greatly in excess of the cost, and, in event of the destruction of the property, the recovery, based upon the intrinsic or potential value of the automobile, would in almost every case exceed the cost price. The insurer has a right to protect itself against the possibility, if not the probability, of being overreached in this manner. The court is not warranted in ignoring the provision of the contract designed to effect the removal of such a possibility, though it may occur, as appears to be the case here, that the insured would prefer to continue the operation of his old car rather than sacrifice it upon the prevailing market. Giving effect to the provisions of the policy, we conclude that the recovery in this case must be limited to the sum of $200, the amount shown by the weight of the evidence to be the actual cash value of complainant's automobile at the time of the fire and the cost of replacing it with another of like kind and quality.

It is suggested that Johnson City is not a fair market for used Stutz automobiles, since there is no agency at that place dealing in this particular make of automobile. However, complainant undertook to establish its market value by at least one local automobile dealer, and if there was no fair market at that place the burden of proof was upon complainant to establish the location of such a market, and the cost of transportation to such market. We find no proof of these matters in the record, and it results that the decree to be here entered will be for the sum of $200, with interest and costs, including costs of appeal.