234 So.2d 871

The FIDELITY AND CASUALTY COMPANY

v.

BANK OF COMMERCE.

4 Div. 284.

Supreme Court of Alabama.

April 30, 1970.

Frank Samples, Phenix City, Rushton, Stakely & Johnston, and N. T. Braswell, III, Montgomery, for appellant.

Jere L. Beasley, Clayton, for appellee.

LAWSON, Justice.

This suit was brought by Bank of Commerce, Clayton, Alabama, against the Fidelity and Casualty Company of New York to recover a loss which the Bank suffered as a result of a financial transaction which it had on January 17, 1964, with an authorized representative of Robert M. Davis, who did business as Eileen Sportswear Company.

Liability is based on a "Bankers Blanket Bond, Standard Form No. 24," in the amount of $180,000 issued by the Fidelity and Casualty Company to the Bank, which bond was in effect on January 17, 1964.

The jury returned a verdict which reads: "We the jury find for the Plaintiff and assess its damages at $4,519.00 plus $660.31 interest or a total of $5,179.31." The trial court, in accordance with the jury's verdict, rendered a judgment in favor of the Bank and against the Fidelity and Casualty Company in the sum of $5,179.31.

After its motion for new trial was denied, the Fidelity and Casualty Company appealed to this court.

### Motion to Dismiss Appeal

The Bank, the appellee, moves that the appeal be dismissed on the ground that the transcript of the record shows that there was no citation of appeal served on the Bank or on its attorney.

The transcript of the record which was originally filed in this court did not show that citation of appeal had been properly served on appellee or its attorney. But a supplemental transcript was filed here showing that citation of appeal was duly served on appellee's attorney approximately seven months before submission was had in this court on brief and argument. No injury or inconvenience to appellee is shown. It follows that the motion to dismiss the appeal must be denied. It is so ordered. Benson-Jackson-Mathers Post No. 5106 v. Donaldson, 267 Ala. 60, 99 So.2d 688, and cases cited.

### Merits

The cause went to the jury on Counts One, Two and Four of the plaintiff's amended complaint and on the defendant's plea of the general issue in short by consent with leave etc.

Appellant, the defendant below, argues its assignments of error to the effect that the trial court erred in refusing to give written affirmative charges in its favor which it requested as to Counts One, Two and Four and as to the complaint as a whole.

Appellee says that the trial court cannot be put in error in refusing the affirmative instructions requested by appellant because they are in improper form, not being based on the jury's belief of the evidence. In other words, the charges refused are affirmative charges without hypothesis. Appellee asserts that where the evidence is solely from witnesses on the side of the party holding the burden of proof, an affirmative instruction must be with hypothesis, such as, "if the jury believe the evidence." White v. State ex rel. Fowler, 262 Ala. 694, 81 So.2d 267, cited by appellee, supports that assertion.

But the holding in the *White case, supra,* has no application here because the burden of proof was on appellee, the plaintiff below. In Western Ry. of Ala. v. Brown, 280 Ala. 543, 548, 196 So.2d 392, it was observed: "It is elementary that the burden is upon the plaintiff to prove her complaint where the general issue is pleaded."

█ The holding of our cases is to the effect that when the party having the burden of proof fails to adduce evidence to support the cause of action or defense, or his witnesses' testimony without conflict makes out a case for the opposing side, the trial court, on request in writing, may give the affirmative charge without hypothesis. White v. State, *supra*; Harris v. State, 215 Ala. 56, 109 So. 291; Anniston Soil Pipe Co. v. Central Foundry Co., 275 Ala. 545, 156 So.2d 637.

Appellee further argues that since appellant's trial attorney expressed satisfaction with the trial court's oral charge, the appellant cannot on this appeal assert error on the part of the trial court in refusing the affirmative charges on grounds which appellee says are in conflict with the oral instructions of the trial court, in that parties are restricted to the theory on which the cause is prosecuted and defended in the court below. In Inter-Ocean Insurance Co. v. Banks, 268 Ala. 25, 27, 104 So.2d 836, cited by appellee, we said in part:

"* * * it is a well-settled rule that parties are restricted to the theory on which a cause is prosecuted or defended in the court below. Where both parties adopt a particular theory they will not be permitted to depart therefrom when the case is brought up for appellate review. (Authorities cited) Change of counsel does not change the rule. * * *"

In Inter-Ocean Insurance Company v. Banks, *supra,* counsel for both parties stipulated that the only question for the court to determine was whether the insurance policy sued on was in force and effect on the date the plaintiff was accidentally injured and the trial was so conducted.

In this case there was no stipulation. Although the appellant, the defendant below, rested without putting on any testimony after the plaintiff below had rested, it is apparent, from the cross-examination of the witnesses called by the plaintiff below, by the attorney for the defendant below, that the theories on which the appellant claims the trial court erred in refusing the affirmative instructions are the theories on which it rested its defense in the trial court.

█ No case has been cited and we have found none which holds that where counsel for a party fails to object to a trial court's oral charge or expresses satisfaction therewith, that party cannot on appeal assert error in the refusal of a requested written affirmative instruction, even though the oral charge may in some respects be erroneous.

In determining the propriety of a general affirmative charge when requested by the defendant, the evidence most favorable to the plaintiff must be accepted as true. Purity Ice Co., Inc., v. Triplett, 257 Ala. 116, 57 So.2d 540; Key v. Dozier, 252 Ala. 631, 42 So.2d 254.

Accordingly, tendencies of the evidence most favorable to the plaintiff will be stated, much of which evidence is without dispute.

In 1963 and 1964, Robert M. Davis was the sole owner of manufacturing plants in Midway and Louisville known as Eileen Sportswear Company. That company sold manufactured products to Winer Sportswear Inc., of Paterson, New Jersey.

Davis was short of money with which to meet his pay roll and other operating expenses while awaiting payment by Winer for merchandise shipped to it. In order to obtain funds with which to meet his pay roll and to pay other expenses while await-

ing payment from Winer, Davis worked out an arrangement with the President of the Bank of Commerce whereby, when merchandise was shipped to Winer, Davis would present to the Bank a copy of a packing slip and a copy of an invoice. Davis would execute a note to the Bank, to which would be attached copies of packing slips and invoice. Winer agreed, upon receipt and acceptance of the merchandise from Eileen Sportswear Company, to send a check to the Bank payable to the Bank and Eileen Sportswear Company in the amount shown on the invoice to be due.

On January 17, 1964 Eileen Sportswear Company needed money. Davis was in Atlanta. He called his manager, John M. Scott, usually referred to as Max Scott, and told him to prepare two packing slips. The evidence is in conflict as to exactly what instructions Davis gave Scott on that occasion. Davis testified that he told Scott to make up packing slips, "for the amount of money we needed to cover the pay roll," and gave him the style numbers to use because "it would make the thing look a little more legitimate," but that Scott itemized the merchandise himself. On the other hand, Scott testified that in the telephone conversation Davis gave him all the information to include in the packing slips; that he did not "come up" with the figures, lots and styles. We interpret appellee's brief as showing that it considers Scott's version of the telephone conversation and of his actions to be more favorable to it, so we will consider Scott's version as being correct.

After the telephone conversation, Scott prepared two packing slips which he signed, "Max Scott." One of those slips was dated January 10, 1964, and the other January 15, 1964. Both indicated that the merchandise described thereon had been shipped by truck to Winer. An invoice was prepared, but the evidence does not show by whom. It bears the date of January 17, 1964, and on its face represents that merchandise of the kind and in the amount shown by the two packing slips

had been sold and shipped by Eileen Sportswear Company to Winer for the sum of $5,649.38. The invoice bears the notation: "Please make check to Eileen and Bank of Commerce."

On January 17, 1964, Mrs. Eileen Davis, the wife of Robert M. Davis, took copies of the packing slips and copy of the invoice to the Bank. She presented those instruments to the President of the Bank and obtained from the Bank the sum of $4,519 upon the execution of a note to the Bank for that amount. The note was signed, "Eileen Sportswear Co., by Eileen C. Davis." Her right to bind Eileen Sportswear Company and her husband is admitted.

The Bank usually received payment in transactions of this kind within sixty to ninety days from date of shipment. When it did not receive a check from Winer within that period of time, it contacted Winer and was later advised by Winer that it had not received the merchandise represented by the packing slips and the invoice dated January 17, 1964, and Winer further advised the Bank that the invoice of January 17, 1964, was a duplicate of a previous invoice. When contacted by the Bank, Davis admitted that the packing slips and invoice were fictitious. Neither Eileen Sportswear Company nor Davis was able to pay the note of January 17, 1964.

Thereafter, the Bank called upon Fidelity and Casualty Company to make good its loss under the terms and provisions of the aforementioned "Bankers Bond." Fidelity and Casualty Company did not comply with that request; hence this litigation.

In Count One of the amended complaint, hereinafter referred to as the complaint, the appellee sought to recover from the appellant under coverage afforded by certain provisions of Insuring Clause B and under coverage of Insuring Clause D of the bond.

We need not set out in this opinion the part of Insuring Clause B quoted in Count One. It bears the caption, "On Premises"

and in rough summary covers loss of "Property," as defined, through stated causes, broadly stated "while * * * lodged or deposited within any offices or premises," with certain premises excluded. Under the evidence adduced at the trial below, which we have summarized above, appellee was not entitled to recover under Insuring Clause B. It does not so contend in brief filed here in support of the judgment of the trial court.

Insuring Clause D reads as follows:

"Any loss through FORGERY OR ALTERATION of, on or in any checks, drafts, acceptances, withdrawal orders or receipts for the withdrawal of funds or Property, certificates of deposit, letters of credit, warrants, money orders or orders upon public treasuries; or any loss (1) through transferring, paying or delivering any funds or Property or establishing any credit or giving any value on the faith of any written instructions or advices directed to the Insured and authorizing or acknowledging the transfer, payment, delivery or receipt of funds or Property, which instructions or advices purport to have been signed or endorsed by any customer of the Insured or by any banking institution but which instructions or advices either bear the forged signature or endorsement or have been altered without the knowledge and consent of such customer or banking institution, or (2) through the payment by the Insured of promissory notes which are payable at the Insured or which are or purport to be notes payable at the Insured under instructions of any depositor thereof, and which are actually paid by the Insured out of funds on deposit with it, and which prove to be forged or altered or which bear forged endorsements.

"Any check or draft (a) made payable to a fictitious payee and endorsed in the name of such fictitious payee or (b) procured in a face to face transaction with the maker or drawer thereof or with one acting as agent of such maker or drawer by anyone impersonating another and made or drawn payable to the one so impersonated and endorsed by anyone other than the one impersonated, shall be deemed to be forged as to such endorsement.

"Mechanically reproduced facsimile signatures are treated the same as handwritten signatures."

■ The invoice was simply a duplicate of an old invoice. It appears to have been typed and no signature appears thereon. The packing slips are admittedly the acts of Scott and are thus the acts of the party whose acts they purport to be. Under our holding in the recent case of Tiarks v. First National Bank of Mobile, 279 Ala. 100, 182 So.2d 366, the packing slips are not forgeries. There was no evidence of any alteration of any writing. It follows that appellee was not entitled to recover under Insuring Clause D of the bond.

Since the appellee's own testimony showed that it was not entitled to recover under Insuring Clause B or Insuring Clause D, the trial court erred in refusing to give the general affirmative charge requested by appellant as to Count One of the complaint.

Count Two of the complaint in pertinent parts reads:

"The Plaintiff claims of the Defendant the sum of Four Thousand Five Hundred Nineteen and No/100 ($4,519.00) Dollars, as damages of a breach of a Bankers Blanket Bond numbered F–54047, issued and made by the Defendant, on, to-wit, September 10, 1956, with riders attached thereto, payable to the Plaintiff, whereby, the Defendant undertook and agreed to indemnify and hold harmless Plaintiff from and against losses sustained and discovered by Plaintiff in part as follows:

" 'Any loss of Property through robbery, burglary, commonlaw or statutory larceny, theft, false pretenses, hold-up, misplacement, mysterious unexplainable disappearance, damage thereto or destruction thereof, whether effected with

or without violence or with or without negligence on the part of any of the Employees, and any loss of subscription, conversion, redemption or deposit privileges through the misplacement or loss of Property, while the Property is (or is supposed to be) lodged or deposited within any offices or premises located anywhere, except in any office hereinafter excluded or in the mail or with a carrier for hire, other than an armored motor vehicle company, for the purpose of transportation.'

"Plaintiff avers that on, to-wit, the 17th day of January, 1964, one Robert Davis and Eileen C. Davis did by virtue of false pretenses obtain Four Thousand Five Hundred and Nineteen ($4,519.00) Dollars as a loan from the Plaintiff by submitting to Plaintiff false, forged, and fictitious invoices as security for said loan secured and obtained from Plaintiff on said date. Plaintiff avers that it paid to the said Robert Davis and Eileen C. Davis the sum of Four Thousand Five Hundred and Nineteen ($4,519.00) Dollars on, to-wit, January 17, 1964, as a direct and proximate result of the false pretenses alleged hereinabove.

   \*   \*   \*   \*   \*   \* "

The provisions of the bond set out in Count Two are those contained in the first paragraph of Insuring Clause B, which was set out in Count One. As we have said above, the evidence adduced at the trial did not warrant a recovery by appellee based on the coverage afforded by Insuring Clause B.

The averments of Count Two in the complaint which immediately follow the provisions quoted from Clause B show no more than that appellee sought to recover for the loss which it sustained by virtue of a loan to Robert Davis and Eileen C. Davis, which loan it is alleged the Davises procured by submitting to appellee "false, forged and fictitious invoices as security."

All other questions aside, the appellee in the paragraph of Count Two presently un-der consideration averred that its loss resulted from a loan and this type of loss is affected by the provisions of § 1(d) of the "Exclusions" in the bond, which section reads:

"Section 1. THIS BOND DOES NOT COVER:

" \* \* \* (d) Any loss the result of the complete or partial nonpayment of or default upon any loan made by or obtained from the Insured, whether procured in good faith or through trick, artifice, fraud or false pretenses, except when covered by insuring Clause (A), (D) or (E)." Insuring Clause A reads:

"Any loss through any dishonest, fraudulent or criminal act of any of the Employees, committed anywhere and whether committed alone or in collusion with others, including loss of Property through any such act of the Employees."

The evidence fails to show that the loss occasioned by the loan resulted from any dishonest, fraudulent or criminal act of any employee of appellee.

We have heretofore held, in effect, that the evidence adduced by appellee shows that its loss was not covered by Insuring Clause D.

Insuring Clause E, which is captioned "Securities," reads in pertinent part as follows:

"Any loss through the Insured's having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon any securities, documents or other written instruments which prove to have been counterfeited or forged as to the signature of any mak-

er, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety, or guarantor or as to the signature of any person signing in any other capacity, or raised or otherwise altered or lost or stolen, * * *; EXCLUDING, HOWEVER, any loss through FORGERY OR ALTERATION of, on or in any checks, drafts, acceptances, withdrawal orders or receipts for the withdrawal of funds or Property, certificates of deposit, letters of credit, warrants, money orders or orders upon public treasuries; and excluding, further, any loss specified in subdivisions (1) and (2) of Insuring Clause (d) as printed in this bond, whether or not any amount of insurance is applicable under this bond to Insuring Clause (D).

&ast; &ast; &ast; &ast; &ast; &ast; "

We pretermit consideration of the question as to whether the packing slips and invoice are "securities, documents or other written instruments" as those words are used in Insuring Clause E. But see Rockland-Atlas Nat. Bank of Boston v. Massachusetts Bonding & Ins. Co., 338 Mass. 730, 157 N.E.2d 239.

■ Since the evidence fails to show that any counterfeited or forged signature was involved in the transaction of January 17, 1964, no recovery is afforded the Bank, the appellee, under Insuring Clause E. Tiarks v. First National Bank of Mobile, *supra*; First National Bank of South Carolina of Columbia v. Glens Falls Insurance Company, 4 Cir., 304 F.2d 866; First National Bank of Memphis v. Aetna Casualty and Surety Company, 6 Cir., 309 F.2d 702.

There being no coverage afforded appellee under Insuring Clause A, D or E, the exclusionary provisions of § 1(d) of the bond operate to deprive appellee of any right to recover under the allegations of Count Two of the complaint to the effect that Robert M. Davis and Eileen C. Davis, by virtue of false pretense, obtained a *loan* from the Bank by submitting to it a false,

forged and fictitious invoice as security for the loan.

We hold, therefore, that the trial court erred in refusing to give the general affirmative charge requested by appellant as to Count Two of the complaint.

Count Four of the complaint in pertinent part reads:

"The Plaintiff claims of the Defendant the sum of Four Thousand Five Hundred Nineteen and No/100 ($4,519.-00) Dollars, as damages of a breach of a Bankers Blanket Bond numbered F-54047, issued and made by the Defendant, on, to-wit, September 10, 1956, with riders attached thereto, payable to the Plaintiff, whereby, the Defendant undertook and agreed to indemnify and hold harmless Plaintiff from and against losses sustained and discovered by Plaintiff in part as follows:

" 'Any loss through the Insured's having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon any securities, documents or other written instruments, which prove to have been counterfeited or forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity, or raised or otherwise altered or lost or stolen * * *'

"Plaintiff avers that on, to-wit, the 17th day of January, 1964, it, in good faith and in the course of business, purchased and acquired and extended credit on the faith of documents or other written instruments, namely, invoices and packing slips from one Robert Davis

and Eileen C. Davis which proved to have been counterfeited or forged as to one or more of the signatures contained thereon. Plaintiff avers that it paid to the said Robert Davis and Eileen C. Davis the sum of Four Thousand Five Hundred Nineteen and No/100 ($4,519.-00) Dollars on, to-wit, January 17th, 1964, as a direct and proximate result of the aforesaid counterfeited or forged signatures.

\*  \*  \*  \*  \*  \* "

The provisions of the bond set out in Count Four of the complaint are found in Insuring Clause E, which we have quoted above. The allegations of Count Four show that appellee bases its right to recover under that count on the claim that the loss which it sustained as a result of its transaction with the Davises on January 17, 1964, was due to a counterfeited or forged signature on "securities, documents or other written instruments" as those words are used in Insuring Clause E.

Again we pretermit consideration of the question of whether the packing slips and invoice are "securities, documents or other written instruments" as those words are used in Insuring Clause E. Again we call attention to the case of Rockland-Atlas Nat. Bank of Boston v. Massachusetts Bonding and Ins. Co., *supra.*

There simply was no evidence tending to show that a counterfeited or forged signature played any part in the loss which the Bank sustained as a result of the transaction with Eileen Sportswear Company or Mr. and Mrs. Davis on January 17, 1964. Tiarks v. First Nat. Bank of Mobile, *supra;* First National Bank of South Carolina of Columbia v. Glens Falls Insurance Company, *supra;* First National Bank of Memphis v. The Aetna Casualty and Surety Co., *supra.*

We hold, therefore, that the trial court erred in refusing to give the general affirmative charge requested by appellant as to Count Four of the complaint.

The judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.

MERRILL, HARWOOD, MADDOX and McCALL, JJ., concur.