**FARMERS BANK & TRUST COMPANY OF WINCHESTER, Tennessee, Plaintiff-Appellee,**

v.

**TRANSAMERICA INSURANCE COMPANY, Defendant-Appellant.**

No. 80–5486.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 4, 1982.

Decided March 29, 1982.

Rehearing Denied May 20, 1982.

David L. Franklin, Anderson, Cleary & Cooper, William Luther, Chattanooga, Tenn., for defendant-appellant.

Robert S. Peters, Swafford, Davis & Peters, Winchester, Tenn., for plaintiff-appellee.

Before MERRITT and JONES, Circuit Judges, and TAYLOR,* District Judge.

MERRITT, Circuit Judge.

In this diversity case from Tennessee, the defendant, Transamerica Insurance Company, appeals from a judgment of the District Court granting the plaintiff, Farmers Bank and Trust Company (Bank), recovery under a bankers blanket bond in the amount of $213,738. The bank's claim for recovery under the blanket bond arises out of a fraudulent sale-leaseback transaction for heavy earth-moving equipment which the bank financed. We do not agree with the District Court's conclusion that the bank's loss was covered by the blanket bond. The District Court allocated the burden of proof on the question of forgery incorrectly and this error led it to make erroneous findings of fact on the issue.

Standard Leasing Corporation purchased in November 1977, a Caterpillar loader and two Caterpillar bulldozers from Herco Corporation, owned by Robert L. Herring. Standard leased them back to Herco under

---

* The Honorable Anna Diggs Taylor, Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

a contract calling for Herco to pay sixty monthly installments of $8,000 per piece of equipment. Standard then assigned the contract to the bank for a consideration of approximately $363,317. Accordingly, the bank became Herco's creditor and lessor. During negotiations, Standard gave the bank several supporting documents—among them, a bill of sale for the three pieces of equipment. The bill of sale bore the signature of David M. Hill and recited that City Fuel Oil Company, owned by Hill, had sold the equipment to Herco on September 12, 1977.

Robert L. Herring, owner of Herco, after making payments of $8,914.97, defaulted on the lease. The bank discovered that the equipment did not exist and had never been in the hands of Hill, Herring or Herco. The bank later discovered that the signature of David M. Hill had not been penned by Hill but rather had been affixed to the bill of sale by Robert L. Herring.

The bank filed a claim against Transamerica for the loss under Clause (E) of its blanket bond. Clause (E), a standard provision in bankers blanket bonds, covers:

> *(E) Loss* (1) through the insured's having ... purchased ... on the faith of, or otherwise acted upon ... written instruments which prove to have been
>
> > (a) counterfeited or *forged as to the signature of any maker* (emphasis added).

The bank maintained that the signature of Hill on the bill of sale was forged. Transamerica refused to indemnify the loss relying upon the exclusions provided in Section (2) of the bond. The applicable portion of the exclusion section provides:

> Section 2 THIS BOND DOES NOT COVER:
>
> (e) loss resulting from ... default upon, ... any transaction in the nature of ... a loan made by ... the insured or ...
>
> agreement or other evidence of debt assigned or sold to ... the insured, whether procured in good faith or through trick, artifice, *fraud* or false pretense, unless such loss is covered under [Clause E]. (emphasis added)

Transamerica does not dispute that there was a fraud on the bank but maintains that unless the fraud is accompanied by a forgery "as to the signature of any maker," as required by Clause (E), the loss is not covered.

Transamerica argues that the District Court's finding that the bill of sale was a forgery was clearly erroneous. As the District Court stated in its opinion, a person is not guilty of forgery if he signs another's name with authority to do so, or if the signature is subsequently ratified. The question is whether David Hill authorized Robert Herring to sign Hill's name on the bill of sale or whether Hill ratified the signature. Transamerica makes two points: (1) that the burden of proof for the authority-ratification issue lay with the bank as an element of its case to establish a forgery and that the court improperly placed the burden of proof on Transamerica; and (2) that the bank failed to prove lack of authority or ratification and that Transamerica's evidence in rebuttal clearly established authority.

■ It is elementary in insurance law that a claimant under an insurance policy has the initial burden of proving that he comes within the terms of the policy. J. Appleman, 21 Insurance Law and Practice § 12091 (1980). 46 C.J.S. *Insurance* § 1316 (1946). Conversely, the insurer carries the burden if it claims that one of the policy exclusions applies to the claimant and prevents recovery. In the court below the judge concluded that "[i]t was incumbent upon the defendant to establish satisfactorily its defense that Mr. Hill's signature was affixed by the hand of another in a legally binding manner .... This it did not do." Thus the District Court put the burden of proving the forgery on the defendant insurance company.

It is necessary to consider the way the bankers blanket bond is drafted in order to determine which party had the burden of proof on the signature question. Bankers blanket bonds are generally drafted with

standard clauses which describe both the coverage and the exclusions. In the standard Clause (E) provision, the bank is protected against losses resulting from the purchase of documents or other written instruments which prove to have been forged. Forgery coverage is optional. In some blanket bonds, such as the one here, express protection against forgeries is provided. In other policies, the insured may elect not to buy forgery protection and the policy may include an express exclusion for loss caused by forgery. *E.g., American National Bank and Trust Co. of Bowling Green, Kentucky v. Hartford Accident and Indemnity Co.,* 442 F.2d 995 (6th Cir. 1971).

■ The general rule applies to determine the allocation of the burden of proof whether losses from forgeries are covered risks or excluded losses. The one suing on the bond has the burden "to prove all of the facts essential to a recovery," J. Appleman, 21 Insurance Law and Practice § 12294 at 350 (1980), and the insurer has the burden of proving exclusions. *E.g., Calcasieu-Marine National Bank of Lake Charles v. American Employers' Insurance Co.,* 533 F.2d 290, 295 (5th Cir. 1976), *cert. denied sub nom., Louisiana Bank & Trust Co. v. Employers Liability Assurance Corp.,* 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976) (burden on insurer to show exclusion of coverage under bankers blanket bond). Therefore, the bank must prove forgery in order to recover under a bankers blanket bond. *Fidelity and Casualty Co. v. Bank of Commerce,* 285 Ala. 580, 234 So.2d 871 (1970); *See Texas National Bank v. Fidelity and Deposit Co.,* 526 S.W.2d 770 (Tex.Civ. App.1975) (bank has burden of proving it sustained loss *through* its acceptance of forged securities); *Cf. Lyndonville Savings Bank and Trust Co. v. Peerless Insurance Co.,* 126 Vt. 436, 234 A.2d 340 (1967) (bank must prove elements of the crime of false pretenses to recover on bankers blanket bond for loss resulting from payment for a bad check). Conversely, where the bankers bond policy has an express exclusion for losses caused by forgery, the burden to prove the forgery, and therefore the exclusion of coverage, is on the insurer. *United*

*Pacific Insurance Co. v. Idaho First National Bank,* 378 F.2d 62, 68 (9th Cir. 1967) (applying Idaho law).

■ Although we find no Tennessee cases which squarely address the question of whether the plaintiff bears the burden of proving that there was a forgery in order to recover under a bankers blanket bond we do find that Tennessee law is in accord with the general rule regarding the allocation of the burden of proof in insurance claims. Tennessee case law recognizes that the burden is on the insured to prove the essential elements of his cause of action to recover on an insurance policy. *Curtis v. American Casualty Co.,* 60 Tenn.App. 204, 445 S.W.2d 661 (1968) (life insurance claim). *See Hurt v. Merchants and Manufacturers Insurance Co.,* 188 Tenn. 572, 221 S.W.2d 808 (1949) (automobile insurance claim). Specifically, the claimant must prove the existence and validity of the insurance policy, *Epstein v. Great American Insurance Co.,* 54 Tenn. App. 447, 392 S.W.2d 331 (1965), the extent or amount of loss where the fact is in issue, *Shipley v. American Central Insurance Co.,* 21 Tenn.App. 259, 109 S.W.2d 100 (1937) and that the death or injury of the insured was the result of a cause, and was sustained in a manner, covered by the policy. *Gilmore v. Continental Casualty Co.,* 188 Tenn. 588, 221 S.W.2d 814 (1949); *McFarland v. Massachusetts Bonding & Insurance Co.,* 157 Tenn. 254, 8 S.W.2d 369, 64 ALR 962 (1928); *Reserve Life Insurance Co. v. Whittemore,* 59 Tenn.App. 495, 442 S.W.2d 266 (1969); *Woodard v. Interstate Life and Accident Co.,* 25 Tenn.App. 120, 152 S.W.2d 636 (1941); *Bell v. Travelers' Insurance Co.,* 18 Tenn.App. 552, 79 S.W.2d 824 (1935). Tennessee also recognizes the general rule that the burden of establishing that a loss resulted from a cause falling within a policy exclusion is on the insurer, *Freeze v. Continental Casualty Co.,* 5 Tenn.App. 261 (1927), and therefore to avoid liability the insurer has the burden of proving that the insured's death or injury resulted from a risk excluded from an accident insurance policy. *Interstate Life and Accident Insurance Co. v. Gammons,* 56 Tenn.App. 441, 408 S.W.2d

397 (1966) (exclusion for injuries resulting from intoxication). Therefore, we think it is clear that Tennessee law on the subject of allocation of burden of proof in insurance cases is in accord with generally accepted rules.

It appears, moreover, that when the issue of forgery arises in a suit to collect a note, Tennessee law places "the burden of proof on the complainant with respect to the execution of the note." *Phillips v. Tidwell*, 26 Tenn.App. 543, 174 S.W.2d 472, 477 (1942). Thus general insurance law and principles of Tennessee contract law would place the burden of proof on the plaintiff bank to show that the bill of sale was forged. The District Court improperly placed the burden of proving a forgery on the defendant, Transamerica.

■ It remains to consider whether the bank proved a forgery. There is no need to remand this case for the purpose of giving the bank the opportunity to meet its burden of proof. All the significant testimony was submitted by deposition and the District Court did not conclude that the defendant bore the burden of proof during the course of trial, but in its memorandum opinion. There is no indication that the bank would have presented any additional evidence or that it expected the burden of proof to be placed on the defendant.

Neither Hill, who was murdered shortly before trial, nor Herring, who was serving a sentence in a federal penitentiary for fraud and who had invoked his Fifth Amendment privilege, testified as to this or any other issue. The bank solicited testimony from two individuals concerning whether Herring was authorized to sign Hill's name to the contract of sale. Mrs. Hill, David Hill's wife, testified that she did not know, and had no reason to know, whether her husband ever authorized someone else to sign his name. Similarly, Mr. Daniel Hatcher, a notary public who had notarized the false bills of sale, testified that the signature on the bill of sale was not that of David Hill, that he did not specifically recall notarizing the document, but that he would not have notarized it if Mr. Hill had not specifically

given authority for someone else to sign his name. It is fair to conclude that this evidence, properly viewed, does not establish a lack of authority. Mrs. Hill's testimony is not probative because, as she admitted, she knew nothing of her husband's business practices. Mr. Hatcher's testimony establishes the *existence* of authority as opposed to negating its existence. In short, the bank's evidence did not establish lack of authority as an element of forgery.

Transamerica's proof on rebuttal is strong. Transamerica presented evidence that Herring and Hill worked out an almost identical scheme to defraud the CIT corporation. In the previous scheme Herring signed Hill's name as purchaser—this time to five conditional sales contracts. The contracts were for non-existent equipment. The conditional sales contracts were then sold to CIT by Herring, making CIT Hill's creditor with non-existent bulldozers for security. Although Hill had not actually signed the conditional sales contracts he nonetheless made payments to CIT, using money funneled to him by Herring. Hill ultimately defaulted in his payments to CIT. These facts present a pattern strikingly similar to the present case. The defendant presents strong evidence that in the scheme against CIT Hill authorized Herring to sign his name, and this evidence raises a strong inference that similar authorization was given here.

There is also the direct evidence of the notary public, Hatcher, that he would not have notarized the signature of Hill's name on the bill of sale unless Hill had authorized him to do so. Then there is the strong circumstantial evidence arising out of the phony paper transaction. The scheme began with Hill "selling" the equipment to Herring, d/b/a Herco, who then engaged in a sale/leaseback transaction with SLC. Finally, and most damaging, Herring subleased the non-existent equipment back to Hill. The only logical reason Hill would accept a sublease of non-existent equipment, which carried with it sixty lease payments of at least $8,000 each, is that he was a full partner in the fraud and either had

authorized Herring to sign his name, or ratified the signature.

Therefore, we conclude that the plaintiff did not carry its burden of proof that Hill's signature on the bill of sale constituted a forgery.

Accordingly, the judgment of the District Court is reversed.